# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-KA-02669-SCT

*TISSUS HORTON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/03/2003 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM C. BRISTOW |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY | JOHN R. YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/23/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., CARLSON AND GRAVES, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Tissus Horton was convicted in the Circuit Court of Lee County of felony child abuse and was sentenced to a term of twenty years in the custody of the Mississippi Department of Corrections, with eight years suspended, and five years of post-release supervision. Following the denial of her motion for JNOV or, in the alternative, a new trial, Horton timely appealed to this Court. Finding no reversible error, we affirm the judgment of the Circuit Court of Lee County.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.     On April 28, 2001, after spending the evening in the care of his father's new wife, Tissus Horton, six-year-old Samuel[1] was rushed to the emergency room with blisters on his feet and legs. Unaware of the cause of the blisters and burns, doctors treated Samuel for staph infection and released him after approximately eight days. Six months later, Samuel confided in a neighbor and then his mother that Tissus Horton had forced him to take a bath in scalding hot water. When he refused and had attempted to get out of the tub, she beat him with a curtain rod.

¶3.     Tissus Horton was indicted by a Lee County Grand Jury on January 31, 2002, on one count of felonious child abuse. Trial commenced on November 24, 2003, Hon. Paul S. Funderburk presiding. Because of the nature of this case, we feel compelled to detail the testimony at trial.

¶4.     The State called several witnesses. Samuel's mother testified that her six-year-old son was visiting his father the weekend the incident occurred. She received a call from her ex-husband informing her that something was wrong with their son and that she was to meet them at the hospital. Upon arriving at the hospital, she observed blisters on her son's feet and legs. Samuel was in the hospital for approximately eight days. After the incident, Samuel was allowed to visit his father, but Tissus Horton was not present during these visits.

---

[1]Samuel is a fictitious name which we will use in referring to the minor victim.  No legitimate purpose would be served by identifying this victim of tender years.

¶5.    Samuel's mother testified that approximately five months after the incident Samuel first informed a neighbor, Gena Aleva,[2] and then informed her that Tissus had caused the burns on his legs.  When questioned about what her son had told her concerning the incident, Samuel's mother testified that he said:

> Tissus put him in a bathtub with hot water in it, and he told her that the water was too hot. And instead of her putting cold water in there, she didn't. She put more hot water in it. . . . And she told him to reach down and get the stopper out of the tub. And when he didn't, she hit him with a rod off the mini-blind and then told him to reach in there and get the stopper out again.

Samuel's mother stated that her son waited five months to tell her what had occurred because he was afraid Horton "would whoop him." Samuel's mother then informed Nurse Link and later Tammy Soden, a social worker with the Mississippi Department of Human Services, of what her son had told her.

¶6.    Samuel was six years old at the time of the incident and eight years old at the time of the trial.  Samuel testified that on a Saturday night, Tissus ran the water in the tub for his bath, and that when he got in the tub, he told Tissus that the water was too hot. Samuel thought that Tissus then added cold water to the tub, but she again cut on the hot water.  When Samuel got back into the tub, the water was hot and burning him.  He told Tissus he had to go to the bathroom, so he could get out of the tub, but then he had to get back into the tub.  According to Samuel, once he bathed, Tissus told him to pull the plug out of the drain, and when he had

---

[2]Pursuant to Miss. R. Evid. 803(24), a hearing was held to determine if the testimony of Samuel's mother, as well as the testimony of Tammy Soden and Lanette Washington, would be admissible as an exception to the hearsay rule. Finding that the testimony satisfied both the necessity prong and the trustworthiness prong and further finding that the testimony was more probative than prejudicial, the trial court allowed the hearsay statements to be admitted into evidence.

trouble pulling the plug, Tissus hit Samuel on the back twice with the curtain rod. When Samuel got out of the tub, he noticed that he had blisters on his feet, and upon telling Tissus, she said she did not know how that could have occurred, and she did nothing to treat the blisters. Samuel also testified that Tissus told him that if he told his father about what had happened, she would "whoop me." Samuel further testified that the treatment he received at the hospital was very painful. He also admitted that he told the doctors at the hospital that at first he believed the blisters possibly occurred while playing outside in the weeds.

¶7.    The State next called Tammy Soden, a social worker for the Mississippi Department of Human Services ("DHS"), who testified she received a report on September 26, 2001, that Samuel had been "burned in bath water." Soden testified that she interviewed Samuel alone the next day at his home. Soden further testified that Samuel told her that "his Daddy's girlfriend,[3] Tissus, put him in hot water." Soden questioned Samuel about the water, and he informed her that it was hot and that Tissus knew it was hot. Soden testified that Samuel also stated he bathed alone and that there were no other children present. Soden saw the marks left on Samuel's feet and legs. Soden also testified that:

> I asked him why he had not told what happened, and he said -- he just sat there. He wouldn't say anything at first, and I asked him was he afraid or scared, and he said -- he nodded yes, and said, *Scared*. And I asked him if anyone had told him not to tell as well, and he said that Tissus told him don't tell or she'll whip me.

---

[3]Tissus Horton and Samuel's father were married on May 27, 2000.

Soden testified that after speaking with Samuel, she contacted Detective Lanette Washington, a detective with the Tupelo Police Department, to file a statement regarding her interview with Samuel.

¶8.     Detective Washington, who works mostly in child abuse sex crimes and elderly abuse, testified that she received a call from DHS concerning Samuel. She interviewed Samuel on October 30, 2001. Washington testified that Samuel told her Horton had forced him into a tub of hot water causing him to suffer burns on his feet and legs. At the time of the interview, Washington took pictures of Samuel's scars which she stated "[started] on his buttock area, all the way to his feet."

¶9.     Dr. Charles Robertson, a pediatrician for North Mississippi Pediatrics, testified that he admitted Samuel to North Mississippi Medical Center on April 29, 2001, after he came to the emergency room the night of April 28. Dr. Robertson testified that he noticed Samuel had:

> an unusual pattern on his -- backs of his legs, basically, where he had some rather large blisters almost confluently around at least one, or maybe both, ankles, and there was redness going up the back and some blisters higher on the leg, on the posterior thigh, and some areas of redness without blistering. . . . It went up almost to his waist. There was diffuse redness at the back of his legs, over the buttocks, to about the waist area, and there did not seem to be any on the front. . . . my initial concern was that he had a staph or a strep infection that was rapidly progressing. The emergency room physician had told me that he had seen the blisters evolve, so infection, which needed to be treated with antibiotics, was my first concern.

Samuel was admitted to the hospital and placed on IV antibiotics. A plastic surgeon, Dr. Robert C. Buckley, was also consulted to help manage the blisters and burns. On May 6, 2001, Samuel

was discharged with a diagnosis of probable Staphylococcal Scalded Skin Syndrome.[4] Dr. Robertson was never informed that Samuel was placed in a tub of hot water. Also, although the test for Scalded Skin Syndrome test was negative, Dr. Robertson said this condition was "very uncommon." We note this colloquy at the end of Dr. Robertson's direct examination. "Q. Dr. Robertson, after reviewing the notes, was this injury consistent with a child being put in a tub of hot water. A. Yes, it is consistent with that."

¶10. Dr. Robert C. Buckley, board certified in plastic surgery, testified that he was called in to consult on Samuel's case. Although he did not directly ask the family what had caused Samuel's injuries, he was informed that they were due to bug bites.

¶11. Dr. Robert Van Walling, an accepted expert witness in the field of pediatric medicine, was also a State's witness. Dr. Walling opined from the medical records and Samuel's admissions that Samuel was a victim of non-accidental trauma. Dr. Walling stated that it was not uncommon for a victim of physical abuse, especially a child, to delay in telling an adult about the abuse. Dr. Walling also stated that he has found children find it difficult to discuss the abuse if the abuser is close at hand. After Dr. Walling's testimony, the State rested. The defendant moved for a directed verdict, which was denied by the trial court.

¶12. The defendant's first witness was Vandetta Gates, Tissus Horton's sister. Gates testified that on the day of the incident Horton's two children and her own child, along with Samuel, were playing at Gates's grandmother's house. After Horton got off work, she came by and

---

[4]The word "scalded" is a description of the skin and does not necessarily mean that the skin was burned by a hot liquid. The condition is caused by a "poison put out by the staphylococcus that causes skin layers to separate."

picked up her two children and Samuel. Gates left with her child approximately five minutes later to meet Horton at her home because she wanted to use her computer. After they got to Horton's house, the children went out to play in the backyard. Gates testified that Samuel came up to her complaining that his foot hurt. She noticed that he had a water blister on the back of his foot and told him she would ask his father to get him some medicine when he came home. Gates testified that approximately thirty minutes later, Samuel started complaining about his foot again. She noticed the blister had spread, so she went inside to inform Horton that Samuel had a water blister on his foot.

¶13.    Gates testified that Horton was cooking dinner for the children, and Horton asked her two daughters to run their bath. After the girls got out of the bath tub, Samuel got in the same water. Gates testified that all three children supervised their own baths, i.e., running the water, bathing, and getting out. Gates testified that she stayed at Horton's home for approximately four hours and never heard anyone crying or complaining. She left Horton's home when Samuel's father arrived home from work at approximately 9:00 p.m. However, Gates testified that before she left, she informed Samuel's father about the blister on the back of Samuel's foot.

¶14.    Tissus Horton testified on her own behalf and stated that on April 28, 2001, her husband called to inform her the children were at her grandmother's house. When she got off work at approximately 4:30 or 5:00 p.m., she went to her grandmother's house and visited for thirty minutes and then took the children home to cook them dinner. Horton testified that after they got home, the children and her sister, Vandetta Gates and her daughter, all played outside

7

while she cooked dinner. After they came inside, Horton told her older daughter to go run the bath water for herself and her sister. After the girls got out of the tub, Horton told the older daughter to tell Samuel to get in the bathtub. Horton testified that Samuel took a bath in the same bath water that her girls used. Horton testified that when her husband returned from work, her sister informed him of the blister on Samuel's foot. During cross-examination, Horton testified that she had never been interviewed by the State's investigator, Jerry Crocker.

¶15. Samuel's father also testified for the defense that he arrived home at approximately 6:00 or 7:00 p.m. on the evening of April 28, 2001. He testified that his son told him, after Gates left, that he had a blister on his foot. He began to worry after the blister started spreading, so he took Samuel to the emergency room. The father further testified that he called Samuel's mother once they arrived at the hospital. After the testimony of Samuel's father, the defense rested.

¶16. In rebuttal the State called Jerry Crocker, an investigator for the district attorney's office. Crocker testified that on August 27, 2003, he interviewed Tissus Horton. During this interview, Horton informed Crocker that "she was in another room when [Samuel] came into the room and told her that the bath water was too hot. Tissus Horton stated that she told [Samuel] to go and get back into the bathtub, that the water could not be too hot because her two daughters took a bath before he did in the same bath water." Crocker stated that Horton was not given the opportunity to read and sign this statement but that this was a memorandum of what she had said to him during their interview. Crocker also testified that this interview was

conducted at the request of Horton's attorney. Upon the end of testimony, the defense moved again for a directed verdict, which was denied by the trial court.

¶17.    After receiving instructions from the court, and hearing closing arguments from counsel, the jury retired to deliberate and in due course found Horton guilty of felony child abuse. Horton was sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections, with eight years of the sentence suspended.   Horton was also placed under post-release supervision upon her release for a period of five years pursuant to Miss. Code Ann. § 47-7-34. Horton filed a motion for a judgment notwithstanding the verdict, or, in the alternative, for a new trial, which motions were denied  by the trial court.   Horton timely filed notice of this appeal raising issues as to the sufficiency and weight of the evidence.

**DISCUSSION**

¶18.    Although Horton combines her arguments regarding the sufficiency of the evidence and the weight of the evidence, this Court has, on numerous occasions, found these to be two very separate issues.

### A. Sufficiency of the Evidence

¶19.    The standard of review for a post-trial motion is abuse of discretion.  ***Howell v. State***, 860 So. 2d 704, 764 (Miss. 2003).  In the recent case of ***Bush v. State***, 895 So. 2d 836, 843

(Miss. 2005), we discussed the standard which applies in a challenge, via a JNOV motion, to a verdict based on the sufficiency of the evidence:

> In *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968), we stated that in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows 'beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.' However, this inquiry does not require a court to
>
>> 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
>
> *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citations omitted) (emphasis in original). Should the facts and inferences considered in a challenge to the sufficiency of the evidence 'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,' the proper remedy is for the appellate court to reverse and render[, i.e. reverse and discharge]. *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985) (citing *May v. State*, 460 So. 2d 778, 781 (Miss. 1984); *see also Dycus v. State*, 875 So. 2d 140, 164 (Miss. 2004). However, if a review of the evidence reveals that it is of such quality and weight that, 'having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,' the evidence will be deemed to have been sufficient.

¶20. In order to convict Tissus Horton of the felonious child abuse of Samuel, the State was required to prove, pursuant to Miss. Code Ann. § 97-5-39 (Rev. 2000), Horton (1) intentionally; (2) burned; (3) Samuel (a child); (4) causing serious bodily injury.

¶21.    Samuel testified that Tissus Horton forced him to take a bath in scalding hot water. When he tried to climb out of the tub, Horton beat him with a curtain rod. Although Samuel waited almost six months to tell his mother about the incident, an expert in pediatrics testified that it was not uncommon for a child to wait until he felt safe to reveal the true nature of his abuse and his abuser. In addition, there was proof of painful and serious bodily injury requiring an eight-day hospitalization and leaving permanent, visible scars. While Tissus and her sister testified as to a different version of the events of the night in question, the conflict between the two versions was a question of fact for resolution by the jury. Obviously, the jury credited Samuel's version of events. Viewing the evidence in the light most favorable to the State, Samuel's testimony alone provided sufficient evidence with which a rational juror could have found that the State proved Horton committed all of the elements of felonious child abuse. Therefore, we find without question that the trial court did not err in denying Horton's motion for a judgment notwithstanding the verdict, and we thus find this issue to be without merit.

### B. Weight of the Evidence

¶22.    "A motion for new trial challenges the weight of the evidence. A reversal is warranted only if the lower court abused its discretion in denying a motion for new trial." *Edwards v. State*, 800 So. 2d 454, 464 (Miss. 2001) (citing *Sheffield v. State*, 749 So. 2d 123, 127 (Miss. 1999)). "A greater quantum of evidence favoring the [S]tate is necessary for the [S]tate to withstand a motion for a new trial, as distinguished from a motion for J.N.O.V." *Pharr v. State*, 465 So. 2d 294, 302 (Miss. 1984). The verdict must be "so contrary to the

overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." ***Bush***, 895 So. 2d at 844. Further in ***Bush***, we held:

> the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, "unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict." Rather, as the "thirteenth juror," the court simply disagrees with the jury's resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.

***Id.*** (footnotes & citations omitted). Although there is conflicting testimony, namely between the accused and the accuser, we find there is ample undisputed evidence that Tissus Horton intentionally burned Samuel. Therefore, as with the JNOV motion, we find that the trial court did not err in denying Horton's motion for a new trial. Thus, this issue is likewise without merit.

## CONCLUSION

¶23.     The trial court properly denied Tissus Horton's motions for directed verdict and for a judgment notwithstanding the verdict. Reasonable and fair-minded jurors in the exercise of impartial judgment certainly could have found that the State had proved, beyond a reasonable doubt, each and every element of the crime of felony child abuse. Also, as to the motion for a new trial, we certainly are unable to say from the record before us that the jury's verdict was

against the overwhelming weight of the evidence. Therefore, we affirm the judgment of conviction of felony child abuse and imposition of sentence of the Lee County Circuit Court.

¶24.    **CONVICTION OF FELONY CHILD ABUSE AND SENTENCE OF TWENTY(20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH EIGHT (8) YEARS SUSPENDED AND FIVE (5) YEARS OF POST-RELEASE SUPERVISION PURSUANT TO MISS. CODE ANN. § 47-7-34, WITH CONDITIONS, AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, GRAVES, DICKINSON AND RANOLPH, JJ., CONCUR.  DIAZ, J., NOT PARTICIPATING.**