# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00410-COA

**TERRY DUSTIN BAUGHMAN A/K/A TERRY D.**          **APPELLANT**
**BAUGHMAN A/K/A TERRY BAUGHMAN**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/27/2019 |
| TRIAL JUDGE: | HON. ANTHONY ALAN MOZINGO |
| COURT FROM WHICH APPEALED: | MARION COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/07/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE J. WILSON, P.J., GREENLEE AND LAWRENCE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1. Terry Baughman was convicted in the Marion County Circuit Court for Count I, possession of Oxycodone, in violation of Mississippi Code Annotated section 41-29-139(c) (Rev. 2018) and Count II, driving under the influence of "any other substance," in violation of Mississippi Code Annotated section 63-11-30(1)(b) (Rev. 2013). Baughman was also found to have violated section 63-11-30(2)(d) for having a fourth or subsequent DUI conviction. Baughman was sentenced, as a nonviolent habitual offender, to serve three years for Count I and ten years for Count II in the custody of the Mississippi Department of

Corrections. The court ordered Baughman's sentences to run consecutively and Baughman to pay court costs, a $1,000 fine for his conviction in Count I, a $3,000 fine for his conviction in Count II, $500 to the Public Defender's Reimbursement Fund, $500 to the District Attorney Investigative Fund, and $500 to the Columbia Police Department.

¶2. After the denial of his motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, Baughman appealed. Baughman claims (1) there was insufficient evidence to support the jury's verdict in Count II, (2) the jury's verdict in Count II was against the overwhelming weight of the evidence, and (3) it was plain error for the trial court to admit the testimony of two police officers without the officers first being tendered and accepted as expert witnesses. Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶3. At trial, Officer Jason Cook with the Columbia Police Department testified that around 8:30 p.m. on March 15, 2017, he observed a vehicle driving on Highway 98 with one headlight. As a result, Jason[1] initiated a traffic stop at a nearby O'Reilly Auto Parts in Columbia, Mississippi. While speaking to the driver, who was identified as Terry Baughman, Jason noticed that he had slow to slurred speech, his eyes were bloodshot and glossy, and he smelled of marijuana. Jason testified that, based on his training and experience, he believed Baughman was possibly impaired or under the influence.

¶4. Jason asked Baughman to step out of the vehicle and patted him down. He found a small metal pipe in Baughman's pocket and a half-smoked cigarillo in Baughman's wallet.

---

[1] For readability, we refer to Officer Jason Cook and Officer Nate Cook by their first names.

2

Both contained a "burnt green, leafy-like substance." Jason testified that based on his training, knowledge, and experience, he believed the substance was marijuana. He also found a container of Suboxone strips.[2]

¶5. Although Jason had field-sobriety certifications, he called DUI Officer Nate Cook to the scene. According to Jason, it was typical to call the DUI officer so the patrol officers could respond to other calls. When Nate arrived, Jason told him that he was concerned Baughman was possibly under the influence.

¶6. While Nate administered field-sobriety tests, Jason searched Baughman's vehicle and found "a couple open containers of alcohol." According to Jason, there were three other occupants in the vehicle. He patted them down and ran their information but did not take statements from them. According to Jason, he did not find any drugs on the occupants, and they did not smell of marijuana. Therefore, they were released.

¶7. Baughman was ultimately arrested for driving under the influence and handcuffed; Nate then transported him to jail. Jason remained at the scene until a tow truck arrived. Around 10:30 p.m., Nate returned to the scene and told Jason that he found pills inside a prescription bottle with Baughman's name on it in the backseat of his law-enforcement vehicle.

¶8. Jason admitted that Baughman's blood and/or urine was not tested. However, based on his training and experience, he believed Baughman was impaired from, or under the influence of, marijuana. Jason testified that his opinion was based on the fact that a green,

---

[2] Jason testified that Suboxone strips are usually prescribed to people who are recovering from opioid use.

3

leafy substance was found in the pipe and cigarillo, and Jason testified that he did not smell alcohol on Baughman.

¶9.     Nate also testified at trial. Nate was certified in standardized field-sobriety testing and advanced roadside impairment driving enforcement. He testified that officers contacted him when they suspected that a person was under the influence, regardless of whether the contacting officer was certified in field-sobriety testing.

¶10.    When he arrived at the scene, he asked Baughman to walk to his law-enforcement vehicle. According to Nate, Baughman exhibited gait ataxia (i.e., staggering and unsteadiness) and leaned against the vehicle. He also had slurred speech and smelled of marijuana. Nate testified that Baughman refused a blood test but agreed to submit to field-sobriety testing in the O'Reilly Auto Parts parking lot.

¶11.    The walk-and-turn test was administered first. Baughman was instructed to stand with his feet in a heel-to-toe position and to keep his arms by his side. He was then instructed to take nine steps down a line and nine steps back. Nate demonstrated the test, and Baughman said he understood the instructions. He also said that he did not have any medical issues that would prevent him from performing the test. Nate testified that there are eight clues to look for when scoring the test. The eight clues are whether the person (1) starts the test too soon, (2) does not touch heel-to-toe, (3) steps off the line, (4) uses his arms to balance, (5) is unable to balance, (6) turns incorrectly, (7) stops while walking, or (8) takes an incorrect amount of steps. Nate explained that two clues indicate impairment, and Baughman displayed five clues. According to Nate, Baughman started the test too soon, did not touch heel-to-toe,

4

stepped off the line, stopped while walking, and took an incorrect number of steps.

¶12.   Then Nate administered the one-leg stand test.  Baughman was instructed to stand with his feet together and to keep his arms by his side.  He was instructed to then elevate one of his feet six inches, keep it level with the ground, and count until he was told to stop.  Nate testified that there are four clues to look for when scoring the test.  These clues are whether the person (1) uses his arms to balance, (2) sways while his foot is elevated, (3) hops on one foot, or (4) puts his foot down.  Nate explained that two clues indicate impairment, and Baughman exhibited three clues.  According to Nate, Baughman used his arms to balance, swayed while his foot was elevated, and put his foot down.

¶13.   Nate also administered the Romberg test.  Baughman was instructed to stand with his feet together, tilt his head back, close his eyes, and estimate the passage of thirty seconds.  Once he believed thirty seconds had passed, he was to bring his head forward, open his eyes, and say stop.  However, Nate testified that Baughman estimated that thirty seconds had passed when forty-three seconds had actually passed.  Nate explained that this indicated that Baughman's internal clock had slowed, possibly from using a Central Nervous System (CNS) depressant and cannabinoid or a narcotic analgesic.  Nate testified that Baughman also exhibited eyelid tremors during the test, which was indicative of cannabinoid use.

¶14.   Finally, Nate administered the lack-of-convergence test.  He placed the end of a pen approximately twelve to fourteen inches from Baughman's face, moved it in one direction, and then moved toward his eyes.  Nate testified that Baughman exhibited a lack of convergence, or the inability to cross his eyes, which suggests use of "depress[ants] and some

5

inhalants, the social anesthetics and cannabinoid."

¶15. Nate testified that, based on his training and experience, he believed Baughman was under the influence. Nate explained that his opinion was based on the field-sobriety test results. According to Nate, after he arrested and transported Baughman to jail, he found a prescription bottle between the seats in the back of his vehicle. The prescription was for Alprazolam, which is a CNS depressant, and it was prescribed to Baughman. However, Nate testified that a pill identifier indicated that the bottle contained Alprazolam; Carisoprodol, which is also a CNS depressant; and Oxycodone.

¶16. Nate explained that someone under the influence of a CNS depressant will appear similar to someone who is under the influence of alcohol. That is, he or she will usually exhibit sluggishness, slurred speech, and gait ataxia. And, based on his training and experience, Nate testified that Baughman exhibited these qualities. When asked what qualities Baughman exhibited that were indicative of being under the influence of marijuana, Nate stated that he exhibited eyelid tremors and a lack of convergence. He also stated that Baughman's slow, lethargic movements could be attributed to marijuana use.

¶17. Finally, Jacqueline Gledhill, a forensic scientist with the Mississippi Forensics Laboratory testified that she determined that five of the pills were Oxycodone, a Schedule II controlled substance.

¶18. After considering the evidence presented at trial, the jury found Baughman guilty of Count I, possessing Oxycodone, and Count II, driving under the influence of "any other substance." On appeal, Baughman claims (1) there was insufficient evidence to support the

jury's verdict in Count II, (2) the jury's verdict in Count II was against the overwhelming weight of the evidence, and (3) it was plain error for the trial court to admit portions of the officers' testimony without them being tendered and accepted as expert witnesses.

**DISCUSSION**

### I. Sufficiency of the Evidence[3]

¶19. Baughman claims there was insufficient evidence to support the jury's verdict in Count II. Specifically, Baughman claims the State failed to prove that he was under the influence of "any other substance."[4]

¶20. When reviewing a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Reynolds v. State*, 227 So. 3d 428, 436 (¶32) (Miss. Ct. App. 2017) (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005), *overruled on other grounds by Little v. State*, 233 So. 3d 288, 292 (¶¶19-20) (Miss. 2017)). "The issue on appeal is not whether the reviewing court would have found the defendant guilty; rather, the conviction must be

---

[3] Although Baughman combines his arguments regarding the sufficiency and weight of the evidence, these are two very separate issues. *Horton v. State*, 919 So. 2d 44, 49 (¶18) (Miss. 2005). Therefore, we address them separately.

[4] Baughman asserts that the trial court erred by denying his motion for a directed verdict. However, "[a] motion for a directed verdict, request for peremptory instruction, and motion for judgment notwithstanding the verdict all challenge the legal sufficiency of the evidence." *Tott v. State*, 822 So. 2d 1084, 1088 (¶10) (Miss. Ct. App. 2002) (citing *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)). Because "each requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the trial court." *Id*. This occurred when the trial court denied Baughman's motion for a judgment notwithstanding the verdict.

affirmed if there was sufficient evidence for 'any rational trier of fact' to have rendered a guilty verdict." *Id*.

¶21. At trial, the State presented evidence that Baughman's eyes were bloodshot, he exhibited eyelid tremors during the Romberg test, he displayed a lack of convergence, and he did not successfully complete the walk-and-turn test or the one-leg-stand test. Our supreme court and this Court have found that similar evidence was sufficient to support a finding that the defendant was under the influence of marijuana. *See Warwick v. State*, 179 So. 3d 1069, 1073-74 (¶15) (Miss. 2015); *accord Weil v. State*, 936 So. 2d 400, 403-04 (¶¶5-6) (Miss. Ct. App. 2006). Furthermore, Jason testified that Baughman was the only person in the vehicle who smelled of marijuana and did not smell of alcohol. He also testified that he found a "burnt, green leafy-like substance" in a pipe that was found in Baughman's pocket and in a cigarillo that was found in his wallet. Nate testified that he smelled marijuana on Baughman's person as well. We find that this was sufficient evidence for any rational trier of fact to find that Baughman was guilty of being under the influence of "any other substance."

¶22. Baughman takes issue with the fact that his blood or urine was not tested. However, he refused such testing, and this Court has affirmed DUI convictions where blood and urine testing was not done. *Beal v. State*, 958 So. 2d 254, 255-57 (¶¶3, 9) (Miss. Ct. App. 2007). Baughman also argues that the State did not produce evidence of two specific indicators of marijuana usage: lowered inhibitions and increased appetite. However, the State produced evidence of other indicators of marijuana usage. As discussed, the evidence presented at trial

8

is sufficient to sustain Baughman's conviction for driving under the influence of "any other substance."

## II. Weight of the Evidence

¶23. In the alternative, Baughman claims the jury's verdict in Count II was against the overwhelming weight of the evidence.

¶24. When reviewing a challenge to the weight of the evidence, "we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Lloyd v. State*, 228 So. 3d 953, 956 (¶9) (Miss. Ct. App. 2017) (quoting *Bush*, 895 So. 2d at 844 (¶18)). The evidence must be viewed "in the light most favorable to the verdict, and we must affirm unless the trial court abused its discretion in denying a new trial." *Id*. (quoting *Bush*, 895 So. 2d at 845 (¶19)).

¶25. Baughman argues that, considering the evidence, it was more likely that he was under the influence of alcohol than any other substance. And relying on Officer Nate Cook's testimony, he argues that the effects of CNS depressants and alcohol are indistinguishable. However, both officers testified that they did not smell alcohol on Baughman. And Baughman's argument ignores the fact that the State presented sufficient evidence that he was under the influence of marijuana.

## III. Officers' Testimony

¶26. Baughman claims the trial court committed reversible error by admitting testimony from Officers Jason Cook and Nate Cook without them first being tendered and accepted as expert witnesses. "The admission of testimony is within the sound discretion of the trial

9

court." *Christian v. State*, 859 So. 2d 1068, 1070 (¶5) (Miss. Ct. App. 2003).

¶27. Because there was no objection at trial, Baughman did not preserve this issue for appellate review. Therefore, this issue is procedurally barred, and our review is restricted to the plain-error doctrine. The plain-error doctrine allows consideration of the following:

> Obvious error [that] was not properly raised by the defendant and which affects a defendant's fundamental, substantive right. For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Hollingsworth v. State*, 269 So. 3d 456, 458-59 (¶8) (Miss. Ct. App. 2018) (quoting *Johnson v. State*, 155 So. 3d 733, 738-39 (¶8) (Miss. 2014)).

¶28. After reviewing the record, we conclude that the admission of the officers' testimony did not constitute plain error. Furthermore, this Court has held that an officer may testify as to his personal observations of the defendant without being tendered as expert. *Christian*, 859 So. 2d at 1071 (¶10).

## CONCLUSION

¶29. The jury's verdict in Count II was supported by sufficient evidence and was not against the overwhelming weight of the evidence. Additionally, the admission of the officers' testimony did not constitute plain error. Therefore, we affirm Baughman's convictions and sentences.

¶30. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, PJJ., WESTBROOKS, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. TINDELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE**

10

**WRITTEN OPINION.**