BRIDGES, J.,
for the Court.
PROCEDURAL HISTORY
¶ 1. Edward Glynn Blackmon was indicted in the Circuit Court of the First Judicial District of Panola County, Mississippi for sexual battery by one in a position of trust or authority in violation of Miss.Code Ann. § 97-3-95(2) (Rev. 1998). Following a jury trial, Blackmon was found guilty as charged and sentenced by the Honorable George C. Carlson, Jr. to twenty-five years in the custody of the Mississippi Department of Corrections.
¶ 2. Blackmon now appeals this jury decision, citing the following errors for this Court’s review:
1. WHETHER THE LOWER COURT ERRED IN FAILING TO GRANT BLACKMON’S MOTION TO SUPPRESS AND IN ALLOWING THE CONFESSION OF JUNE 12TH TO BE ADMITTED INTO EVIDENCE;
2. WHETHER THE LOWER COURT ERRED IN ALLOWING HEARSAY TESTIMONY OF A STATE WITNESS; AND
3. WHETHER THE LOWER COURT ERRED IN DENYING BLACK-MON’S ATTEMPTS OF COMPLETE CROSS EXAMINATION OF A STATE’S WITNESS.
¶ 3. Finding no error, we affirm.
STATEMENT OF THE FACTS
¶ 4. The victim’s mother, (Mary), Mary’s boyfriend Frank McClusky (boyfriend), and Mary’s fifteen year old daughter (victim) were temporarily living with Mary’s mother and brother at their home in Sar-dis, Mississippi while they were looking for new jobs. On the evening of June 9, 2000, *1255 Mary and her boyfriend went to Olive Branch, Mississippi to visit family and continue with their employment search. The victim remained in Sardis with her grandmother and uncle, Edward Glynn Black-mon.
¶ 5. Sometime during the evening hours of June 9, Blackmon, then thirty-nine years of age, went to the liquor store for beverages. Due to the consumption of vodka and wine, the victim, her grandmother, and her uncle each became extremely intoxicated. At some point that night, the victim became sick, regurgitated on herself and passed out. Thereafter, Blackmon carried the victim to his bedroom for her to sleep.
¶ 6. The victim awoke during the night to find her blue jean shorts had been cut. The crotch area of her shorts, from one side seam and including the zipper range to the other side seam, was jaggedly cut. Additionally, her panties were removed by cutting the elastic sides.
¶ 7. Initially, the victim was unaware of what caused her clothing to be ripped. She began to ask questions and her uncle told her he had performed oral sex on her, an action Blackmon now denies. The victim immediately called her mother in Olive Branch to come to Sardis and take her away. Mary returned to Sardis and took the victim to the Senatobia hospital for medical evaluation. The Panola County Sheriffs office was contacted and Deputy Craig Sheley came to the hospital for further investigation.
¶ 8. Blackmon and his mother testified he was in the kitchen, listening and talking to the radio. Consequently, there was no opportunity for Blackmon to sexually batter his niece. The State contends, however, that when Deputy Sheley arrived at Blackmon’s home, Blackmon told the deputy he “didn’t do nothing to her but” performed oral sex.
¶ 9. It was determined that the object used in cutting the victim’s clothing was a knife. Two knives were recovered from Blackmon’s home, a pocket knife and a knife retrieved from a bedside stand in Blackmon’s room with denim fibers attached to the blade. Trace analysis performed by the Mississippi Crime Lab determined that the fibers were derived from the denim shorts worn by the victim.
¶ 10. Further investigation revealed Blackmon had injuries to his palm, fingers, and backside of his hand. His wounds were covered in blood and blood was found in his hair and head, apparently residue from rubbing his head with his hands. Although no proof was put forward, the judge speculated during the sentencing hearing that the injuries were the result of an extremely intoxicated individual using a knife.
¶ 11. Blackmon was taken into custody during the early morning hours of June 10, 2000. On the morning of June 12, 2000, giving Blackmon two days to sober up and speak with a clear mind, he signed a waiver of rights form and gave a tape recorded confession.
¶ 12. After the testimony of all witnesses involved in the crime, the jury found Blackmon guilty of sexual battery by one in a position of trust or authority. Thereafter, Blackmon was sentenced to twenty-five years in the custody of the Mississippi Department of Corrections.
STANDARD OF REVIEW AND LEGAL ANALYSIS
¶ 13. A brief amount of attention needs to be directed to the particular statute Blackmon was indicted under, Miss. Code Ann. section 97-3-95(2) (Rev. 2000). This statute is applicable to a person in a position of trust or authority over the child under the age of eighteen including without limitation the “child’s teacher, counsel- *1256 or, physician, psychiatrist, psychologist, minister, priest, physical therapist, chiropractor, legal guardian, parent, stepparent, aunt, unde, scout leader or coach.” Miss. Code Ann. § 97-3-95(2) (Rev. 1998) (emphasis added). Blackmon asserted in his motion for directed verdict that the State did not meet its burden of proof because the State failed to prove that the victim was under the care and control of Black-mon. However, this Court interprets the statute to state that any person in control of the care of the child, including, but not limited to, the named classification of individuals, can be held accountable for this crime.
¶ 14. The victim was left in the care of her grandmother. Blackmon, the uncle, was a member of one of the particular classes the statute classifies as in a continuous position of trust and authority, regardless of who is “in charge” of the child. It is for this reason the trial judge correctly dismissed Blackmon’s motion for directed verdict.
1. WHETHER THE LOWER COURT ERRED IN DENYING APPELLANT’S MOTION TO SUPPRESS THE CONFESSION OF JUNE 12.
¶ 15. Blackmon argues that his confession on June 12 was not voluntary. It is his contention because he does not remember receiving his Miranda rights, he could not have voluntarily waived them. Additionally, Blackmon argues that he could not read and write so he could not effectively understand what he was signing when he signed the waiver of rights form. The State argues it has met its burden of proof regarding the statement and the record clearly says the same. The State further alleges the testimony of the officer was not contradicted and the signed waiver of rights form was acknowledged by Blackmon under oath as containing his signature.
¶ 16. Regarding the circuit court’s refusal to grant a motion to suppress, our scope of review is limited. After the lower court has determined that a confession is voluntary, the defendant is saddled with a heavy burden in attempting to have that decision reversed. Greenlee v. State, 725 So.2d 816, 826(¶ 26) (Miss.1998); Crawford v. State, 716 So.2d 1028,1038 (¶ 37) (Miss.1998); Hunt v. State, 687 So.2d 1154, 1160 (Miss.1996); Sills v. State, 634 So.2d 124, 126 (Miss.1994).
“Such findings are treated as findings of fact made by a trial judge sitting without a jury as in any other context. As long as the trial judge applied the correct legal standards, his decision will not be reversed on appeal unless it is manifestly in error, or is contrary to the overwhelming weight of the evidence.”
Foster v. State, 639 So.2d 1263, 1281 (Miss.1994) (citations omitted). Where the court makes such findings, this Court generally must affirm. Lesley v. State, 606 So.2d 1084, 1091 (Miss.1992) (citations omitted).
¶ 17. Examining this assignment of error, Blackmon bases his argument on the contention that the confession of June 12 was not voluntary and is therefore inadmissible under the law. However, Black-mon fails to give this Court any specific incidents which would make the confession involuntary. A confession is not voluntary if it is the product of threats, inducements or promises of leniency. Morgan v. State, 681 So.2d 82, 86 (Miss.1996). A valid argument must produce proof that the state officers conducted themselves in violation of this ruling. Blackmon offers no such proof, with the exception that Blackmon was scared of law enforcement in general, but not Deputy Sheley personally. At the time of the confession, Deputy Sheley was the only law enforcement officer present. Unfortunately for Blackmon, this level of *1257 emotional instability does not warrant a reversal.
¶ 18. Blackmon was intoxicated at the time of his arrest on June 10. Consequently, the trial court properly excluded the first confession he gave on the arrest date. From June 10 until June 12, Black-mon remained in custody and received no further alcohol. On June 12, the day of the second confession, Blackmon was sober, alert, and willing to waive his rights before giving a tape recorded statement to Deputy Sheley. Because Blackmon cannot read or write, Deputy Sheley verbally explained and read Blackmon’s Miranda rights to him. Blackmon said he understood his rights and asked no further questions about them. Blackmon again confessed to cutting the victim’s shorts and performing oral sex on the victim while she was unconscious.
¶ 19. Blackmon testified Deputy Sheley did not threaten him in any way. Defense counsel failed to ask Blackmon while he was under oath if he received any inducements or promises of leniency. Deputy Sheley testified he made no threats, was not wearing a gun for a threatening appearance, and offered no promises of leniency for cooperation. As previously stated, Deputy Sheley was the only officer present at the time of the confession, so he is the only officer who had access for coercion. Therefore, this Court concludes this assignment of error is without merit. Thus, we affirm.
2. WHETHER THE LOWER COURT ERRED IN ALLOWING HEARSAY TESTIMONY OF A STATE WITNESS.
¶ 20. Blackmon calls into question Mary’s testimony on direct examination. The statement in question was made in open court, promptly objected to, and the objection was essentially sustained. Blackmon argues that the jury was tainted by the statement and the judge erred in failing to admonish the jury to disregard the statement. The State maintains the statement was harmless when the jury considers the subsequent testimony.
¶ 21. Mary testified as follows:
Q: So Tonya had become ill. Is that what you’re telling us?
A: She was very sick. I mean, no, she didn’t have any clothes on. She had called me and told me that he had cut her clothes off.
Mr Vanderburg: Objection, objection to the hearsay, Judge. She called me and told me. It’s hearsay. Objection.
The Court: Alright.
¶ 22. We interpret the lower court’s answer as sustaining the objection in Blackmon’s favor. However, we have found no persuasive case law on this subject to help in our interpretation. “Alright” has several meanings in the dictionary, none of which are presented in a legal context. The American Heritage Dictionary defines “alright” as meaning to state “very well; yes” when used as a reply to a question. The American Heritage Dictionary 50 (3d ed. 1992). Following the objection, the State did not attempt to expand on the subject of the objection. Additionally, Blackmon did not ask the judge to admonish the jury to disregard the statement, nor did he ask the court for a specific ruling. “We will not reverse the trial court based upon something that it was not asked to do.” Weatherspoon v. State, 732 So.2d 158(¶ 16) (Miss.1999); see also Fair v. State, 766 So.2d 787 (¶ 19-20) (Miss.Ct.App.2000).
¶ 23. In Foster v. State, 639 So.2d 1263, 1282 (Miss.1994), the appellant argued that remarks by an accessory to the murder charge were prejudicial and constituted reversible error. The Mississippi Supreme Court disagreed, stating: “Foster neither requested that the trial court *1258 admonish the jury to disregard the testimony, nor requested a mistrial. His only objection was sustained. We are of the opinion that any error created by Harris’ unresponsive remark was effectively cured when the trial judge sustained Foster’s objection.” Id. The remarks by Harris in Foster’s case, referring to other bad acts/ raimes by Foster, were more potentially prejudicial than those referring to the stipulations in the case at bar. Because the trial court agreed with the objection, effectively sustaining the objection, and because Blackmon requested no further action, this assignment of error is rejected.
3. WHETHER THE LOWER COURT ERRED IN DENYING BLACK-MON’S ATTEMPTS OF COMPLETE CROSS EXAMINATION OF A STATE’S WITNESS.
¶ 24. Mary’s testimony is again the subject of examination when reviewing this assignment of error. Blackmon asserts that a limitation on Mary’s cross-examination was in error. Blackmon attempted to question Mary about a possible sexual relationship between the victim and Mary’s prior boyfriend. The State contends that the issue is protected under Rule 412 of the Mississippi Rules of Evidence and, therefore, impermissible due to subject matter and Blackmon’s failure to proffer information concerning the testimony also limits appellate review of the matter.
¶ 25. Mississippi Rules of Evidence Rule 412 is a protection of privacy for victims of sexual assault cases. It is designed to prevent the introduction of irrelevant evidence of the victim’s past sexual behavior to confuse and inflame the jury into trying the victim rather than the defendant. Hughes v. State, 735 So.2d 238(¶ 153) (Miss.1999).
¶ 26. Rule 412(a) states that evidence of the victim’s past sexual behavior is generally inadmissible; however, subsection (b) gives possible exceptions to the rule in criminal cases which include that the accused must offer this evidence to prove that he was or was not, with respect to the victim, the source of semen, pregnancy, disease, or injury. M.R.E. 412(a)(b). The critical question is whether the evidence tends to demonstrate that another person is the actual source of the injury, or whether the evidence is simply offered to show the promiscuity or character of the victim. Hughes, 735 So.2d at 273 (¶ 154). Furthermore, subsection (c) sets forth a specific procedure to determine admissibility of evidence under subsection (b) exceptions of the rule. Any party intending to offer evidence must file a written motion at least fifteen days before trial, serve the motion on all parties and notify the alleged victim, and the court must conduct a hearing. M.R.E. 412(c).
¶ 27. Blackmon failed to follow the prescribed procedure and proffer any information or intentions upon all parties prior to trial. After the objection was made, the judge said that he would “have to sustain the objection unless a record is made outside the presence of the jury.” Although the opportunity presented itself, Blackmon did not ask for a hearing for further consideration of this line of questioning for this witness, outside of the presence of the jury, at this time or any other time during the trial. Blackmon failed to take advantage of the opportunity the judge presented and failed to follow proper procedure before trial. In Levy v. State, 724 So.2d 405(¶ 19) (Miss.Ct.App.1998), this Court expressed its opinion concerning this subject. Specifically, we held that failure to give timely notice and qualify for an exception would not warrant a reversal of the trial court’s decision to deny testimony regarding the sexual conduct of the victim. Id. at (¶ 19). Furthermore, failure to proffer testimony is a procedural bar to the issue on appeal. See Witcher v. State, 697 So.2d 1087, 1093 (Miss.1997); Settles v. *1259 State, 584 So.2d 1260 (Miss.1991) (citing Saucier v. State, 562 So.2d 1238, 1245 (Miss.1990)). Accordingly, we find Black-mon’s assertions without merit and affirm.
¶28. This Court affirms Blackmon’s conviction and sentence for the foregoing reasons.
¶ 29. THE JUDGMENT OF THE PA-NOLA COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO PANOLA COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., concur.