CARLTON, J.,
for the Court:
¶ 1. A jury in the Circuit Court of Hinds County, First Judicial District, convicted Joseph Wilson of sexual battery. The trial court sentenced Wilson to thirty years in the custody of the Mississippi Department of Corrections (MDOC). Aggrieved, Wilson appeals his conviction and sentence raising the following six issues for the Court’s review: whether (1) the trial court erred in excluding relevant defense evidence; (2) the trial court erred in its treatment of the Batson objections by the State and the defense; (3) Instruction S-4 precluded the jury from considering one of the statutory elements of the charge; (4) the trial court erred in limiting Wilson’s closing argument; (5) the verdict is supported by the weight of evidence; and (6) the cumulative effect of errors requires reversal. Finding no error, we affirm.
FACTS
¶ 2. On October 19, 2005, at approximately 4:00 p.m., Investigator Latasha Holmes, with the Hinds County Sheriffs Department, responded to a call in reference to a 17-year-old rape victim, Teresa Hughes.[1] When Investigator Holmes arrived at the hospital where Hughes was undergoing examination, she interviewed Hughes regarding the specifics of the rape and learned that Wilson, the victim’s father, had raped her. Investigator Holmes also observed Hughes and took pictures of the bruises on her body. In addition, Investigator Holmes, along with Detective Steven Lofton, also with the Hinds County Sheriffs Department, and John Hughes, the victim’s brother, traveled to the scene of the crime. Investigator Holmes and Detective Lofton then located Wilson at his home and placed him under arrest.
¶ 3. On March 9, 2009, Wilson pled guilty to the charge of sexual battery. Then, after the entry of his plea, through new counsel, Wilson filed for post-conviction relief, which the trial court essentially treated as a motion of the defendant to withdraw his guilty plea. After conducting a hearing, the trial court entered an order that allowed Wilson to withdraw his plea. Wilson’s trial commenced on July 27, 2009. During the trial, Hughes testified that on October 18, 2005, Wilson arrived at her house and proceeded to discipline her with a belt. Hughes testified that after being disciplined, her father instructed her to gather her clothes and to leave with him. Hughes testified that despite her understanding that Wilson was taking her to his home, Wilson drove them to a sand pit in a secluded area of Hinds County. Hughes further testified that once there, Wilson ordered her out of his vehicle and removed all of her clothing. Hughes then testified that Wilson pushed her into his truck and raped her. In addition, Hughes testified that the day following the rape, Wilson drove her to school and offered her thirty dollars for her silence about the rape. Hughes’s mother testified that after receiving a phone call from Hughes informing her of the rape, she instructed her brother to check Hughes out of school and take her to St. Dominic Hospital for an examination and treatment. Investigator Holmes and Detective Lofton testified that the hospital performed a rape kit on Hughes. At trial, the parties stipulated that Wilson is the biological father of Hughes and that the sperm found inside of Hughes was from Wilson.
¶ 4. At trial, Wilson testified that on the night in question, he drank an excessive amount of intoxicating liquor prior to his arrival at Hughes’s house. Wilson testi *1150 fied that he disciplined Hughes with a belt when he reached her house and then ordered her to leave with him. Wilson testified that upon his departure from Hughes’s house, he saw muzzle flashes and heard gunshots aimed toward his vehicle. Wilson testified that when he heard the shots, he pulled into a store to allow Hughes to drive, giving him access to the pistol in his truck in case he needed to respond with gunfire. In addition, Wilson testified that after switching drivers, he started drinking again, passed out, and awoke in his truck in his driveway with his pants down across his legs. Wilson testified that he saw his daughter crawling back into the driver’s seat at this time.
¶ 5. A jury in the Circuit Court of the First Judicial District of Hinds County convicted Wilson of sexual battery. Wilson was sentenced to thirty years in the custody of the MDOC. Aggrieved, Wilson appeals.
DISCUSSION
I. MOTIONS IN LIMINE
¶ 6. Wilson argues that the trial court erred in granting the motions in limine brought by the State.
¶ 7. The standard of review employed by this Court when reviewing the trial court’s admission or exclusion of evidence is abuse of discretion. Ladnier v. State, 878 So.2d 926, 933 (¶ 27) (Miss.2004) (citing Whitten v. Cox, 799 So.2d 1, 13 (¶ 27) (Miss.2000)). ‘Where error involves the admission or exclusion of evidence, this Court ‘will not reverse unless the error adversely affects a substantial right of a party.’ ” Id. “A motion in limine ‘should be granted only when the trial court finds two factors are present: (1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2)the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury.’ ” McNeill v. State, 919 So.2d 77, 82-83 (¶ 15) (Miss.Ct.App.2005) (quoting McGilberry v. State, 797 So.2d 940, 942 (¶12) (Miss.2001)).
¶ 8. The State first filed a motion in limine[2] to prohibit Wilson from making any reference to his pretrial incarceration and also to prohibit Wilson from testifying as to what sentence he stood to receive if convicted. The State’s first motion was undisputed by Wilson. As such, the trial court granted the motion preventing reference to Wilson’s pretrial incarceration.
¶ 9. The State filed its second motion in limine[3] to prohibit Wilson from introducing any testimony concerning the victim’s past sexual behavior. Wilson agreed not to introduce such evidence, and the trial court granted the motion.
¶ 10. The third motion in limine filed by the State sought to exclude all testimony relating to his daughter’s alleged boyfriend, Guy Horn, on the grounds that the testimony was irrelevant and offered only to confuse or mislead the jury. Wilson objected arguing that the witnesses’ testimonies supported his theory that Hughes had accused Wilson of rape in retaliation for his disciplining and interfering with her relationship with Horn. Wil *1151 son specifically claims that the trial court wrongfully excluded the testimonies of Dennis Grant, Horn’s probation officer, and Officer Ken Travis.[4] The trial court granted the State’s motion in limine finding that the proposed evidence by the defendant concerning Horn was not relevant under Mississippi Rule of Evidence 401. The trial court further explained that “[e]ven if [the evidence] were relevant under [Mississippi Rule of Evidence] 402, [Rule] 403 provides that although relevant[,] evidence may be excluded, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury or considerations of undue delay, waste of time or needless presentation of cumulative evidence. The Court finds that based on Rules 401, 402, and 403, as well as the arguments by the State, that ... the motion is granted.”
¶ 11. After a review of the record, we find that Wilson provided no evidence of any plan or conspiracy between Horn and Hughes against Wilson. The State bears no burden to show force or lack of consent when proving the offense of sexual intercourse with a minor by her parent in violation of Mississippi Code Annotated section 97-3-95(2) (Rev.2006). We note, however, that the State does bear the burden of proving that the status of the perpetrator to be the parent of the victim.[5] Therefore, we find no abuse of discretion in the trial court’s ruling on the State’s third motion in limine.
¶ 12. The State filed its final motion in limine aiming to prohibit Wilson from introducing additional witness testimony on the grounds of irrelevancy and lack of personal knowledge. Wilson argues that the witnesses’ testimonies support his theory of a retaliation conspiracy between Horn and his daughter.
¶ 13. In addressing the court’s rulings as to these various witnesses, the record shows that Wilson first sought to call witnesses to testify that he often drank to excess causing him to pass out, unable to be awakened and that he had told these witnesses he possessed the ability to reach sexual completion even while intoxicated based on his previous sexual relations with his former wife, Helen Hughes, the victim’s mother.[6] The testimony was expected to pertain to only what Wilson asserts he had told these witnesses regarding Helen’s sexual activity with Wilson, and it was not to provide any evidence of his sexual activity with his daughter or other persons. In addition, the testimony was not to provide any insight as to an alleged conspiracy or plan against Wilson. The trial court granted the State’s motion to exclude the testimony of these witnesses; the court found that Mississippi Rules of Evidence 401, 402, and 403 applied to exclude the testimony.
¶ 14. Wilson also sought to present testimony from various witnesses pertaining to Horn’s relationship with him and his daughter.[7] The trial court noted that it *1152 had already excluded testimony concerning Horn when ruling on the State’s third motion in limine, and again, the court, under the Mississippi Rules of Evidence 401, 402, 403, and 602, excluded the testimony that concerned Horn.[8]
¶ 15. Wilson then sought to present witnesses Jerome Manuel and Joeann Manuel to testify that they lived near the remote area where the incident had occurred and they failed to hear anything out of the ordinary on the evening in question. The trial court deferred its ruling on these two witnesses until after their testimony was heard outside the presence of the jury. Then, after hearing the testimony of Joeann, the trial judge found her testimony to be purely speculative, irrelevant, and not probative. The trial judge explained that Joeann’s testimony included nothing but possibilities, specifically pointing to her testimony that her house was “a football [field] length away” from the sand pit, where the rape was alleged to have taken place. Further, the trial judge indicated that doubts existed as to what Joeann was doing at the time of the alleged rape, whether the television was on full volume, and whether the windows on her houses were up or down. The trial judge explained that while Joeann testified that she could possibly hear a loud truck on the sandpit from her house, there is no evidence that the truck driven by Wilson on the night of the rape was unusually loud. Furthermore, the trial court stated that even if relevant, Mississippi Rule of Evidence 403 excluded Joeann’s testimony.[9]
¶ 16. Upon review of the record, this Court finds no abuse of discretion by the trial court in granting the State’s final motion in limine. We find that the trial court abused no discretion in excluding Wilson’s evidence showing his sexual responses when previously stimulated by his former wife during their sexual activities. We note that this past sexual relationship was not at issue in this case; thus, the purported evidence lacked relevancy to the issue in the case at hand, Wilson’s sexual conduct with his minor daughter. In addition, the record supports the trial court’s finding that in addition to Rule 401, Rule 403 applied to exclude the evidence. We similarly find no abuse of discretion in the trial court’s exclusion of Joeann’s testimony, which in effect excluded Jerome’s testimony, since the record supports the trial court’s finding that the testimony lacked relevance and was too tenuous. See M.R.E. 401, 403. See also Ladnier, 878 So.2d at 933 (¶ 27). We find no merit to this assignment of error.
II. BATSON OBJECTIONS
¶ 17. In Wilson’s second assignment of error, he argues that the trial court erred in finding during jury selection that his peremptory strikes were insufficiently race neutral. Wilson also claims that the court erred in finding that he had waited too long to make his Batson objections against the State.
¶ 18. This Court employs a well-established standard of review when considering Batson challenges. Camper v. State, 24 So.3d 1072, 1074 (¶ 12) (Miss. *1153 Ct.App.2010). “This Court reviews a trial court’s ruling on a Batson challenge with great deference and will not overturn the trial court’s ruling unless it is clearly erroneous or against the overwhelming weight of the evidence.” Id. at 1074-75 (¶ 12) (quoting Pruitt v. State, 986 So.2d 940, 942 (¶ 8) (Miss.2008)). We accord great deference in the findings of the trial court because “the trial judge is in the best position to evaluate the demeanor and credibility of the attorney offering the gender/race-neutral explanation.” Id. at 1075 (¶ 12) (quoting Perry v. State, 949 So.2d 764, 767 (¶ 7) (Miss.Ct.App.2006)); see also Booker v. State, 5 So.3d 356, 358 (¶ 3) (Miss.2008) (citing Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)) (stating that appellate courts are to give deference to a trial court’s findings on the issue of discriminatory intent since such request requires an evaluation of the counsel’s state of mind which is based on demeanor and credibility and lies “peculiarly within a trial judge’s province”); Aguilar v. State, 847 So.2d 871, 875 (¶ 6) (Miss.Ct.App.2002) (stating that we grant a trial judge a substantial degree of deference in ruling on Batson challenges because it is a factual determination and largely based on credibility).
¶ 19. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits parties from exercising peremptory challenges against jurors “solely based on them race.” Johnson v. State, 529 So.2d 577, 583 (Miss.1988) (citing Batson v. Kentucky, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). When a party asserts that a discriminatory purpose for the peremptory challenge exists, qualifying it as a Batson challenge, a trial court should employ the following three-step procedure:
(1) the defendant must make out a pri-ma facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose; (2) once the defendant has made out a pri-ma facie case, the-burden shifts to the State to explain adequately the racial exclusion by offering permissible, race-neutral justifications for the strikes; and (3) if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination. The burden remains on the opponent of the strike to show that the race-neutral explanation given is merely a pretext for racial discrimination.
Pruitt, 986 So.2d at 942-43 (¶ 8).
¶ 20. Turning to the facts of this case, we will first provide an overview and context of the jury-selection process, and then we will review each of Wilson’s strikes individually that are in issue on appeal. Prior to undertaking jury selection, the trial court explained the procedure to be employed by the court when selecting jurors.[10] See also URCCC 10.01.[11] After the State had exercised its peremptory challenges and tendered its jurors, Wilson accepted the tendered jurors without objection and then began utilizing his own peremptory strikes. The State then raised a Batson challenge asserting that Wilson’s peremptory strikes were based upon discriminatory intent. The State argued that every juror struck by Wilson *1154 was Caucasian and that each juror accepted by the defense was African American. At this time, Wilson responded by raising a Batson challenge on the basis that every juror the State struck was African American. The trial court ruled that Wilson’s Batson objections were untimely, since Wilson had raised no objection prior to the time that the State tendered the jurors and since Wilson had already accepted the jurors tendered by the State. The trial court also found that the race-neutral reasons provided by Wilson for three of his four peremptory strikes were insufficient and pretextual, and the trial judge reseated those jurors since Wilson failed to overcome the inference of discriminatory purpose for the peremptory challenges.
¶ 21. We will now turn to a review of each of Wilson’s individual peremptory challenges, and we recognize, as previously stated, that we review the trial court’s ruling on Batson challenges with great deference and will not overturn the court’s ruling unless we find it clearly erroneous or against the overwhelming weight of the evidence. See Camper, 24 So.3d at 1074-75 (¶ 12).
¶22. In reviewing the specific strikes at issue, the record shows that Wilson used his first peremptory strike against Paul Billingsley, a Caucasian. Wilson claimed that he struck this juror because the juror’s wife was a school teacher in the Hinds County school district. The State challenged this peremptory challenge as discriminatory, claiming that Wilson’s explanation was pretextual and also asserting that because the trial court would instruct the jury not to discuss the case with anyone other than another juror, the status of employment of a juror’s spouse failed to constitute a sufficient race-neutral justification. The trial court determined that the State provided sufficient grounds to challenge Wilson’s purported non-discriminatory purpose for the peremptory challenge, and the trial court found that Wilson failed to rebut the inference of discriminatory purpose.[12] The trial court then restored Billingsley to the jury.
¶ 23. Wilson exercised his second peremptory challenge against Susan Goodman, a Caucasian, on the basis that the juror’s spouse worked as an attorney. In objecting due to a discriminatory purpose, the State responded that the trial court provides instructions to the jury to prevent the jury members from discussing the case with anyone other than another juror. The State also noted that Wilson had accepted juror number six, Mitzi Paige, who was also an attorney. Again, the trial court found that the State sufficiently challenged the race-neutral reasons provided by Wilson.[13] The trial court reinstated the juror on the basis that “[t]here’s been no race[-]neutral reason in the opinion of the Court to exclude her.”
¶ 24. The record reflects that Wilson’s challenge as to Goodman lacked credibility in the context of this case since Wilson had previously accepted an attorney as a juror during the jury-selection process. See *1155 Thorson v. State, 721 So.2d 590, 593 (¶ 4) (Miss.1998) (stating that we give great deference to a trial court’s determination of whether or not a peremptory challenge was race neutral because a finding that a striking party was discrimination is largely a factual finding); Manning v. State, 765 So.2d 516, 519 (¶ 9) (Miss.2000) (identifying five indicia of pretext when analyzing a proffered race-neutral reason for a Batson peremptory strike including failure to voir dire, lack of record to support the stated reason, and group-based traits); Lockett v. State, 517 So.2d 1346, 1349-50 (Miss.1987) (stating that a trial court’s evaluation of Batson claims are essentially findings of fact and that we have a limited scope of review of factual findings).
¶25. Wilson then utilized a peremptory challenge on Matthew Quick, a Caucasian, on the ground of his youthful age of twenty-one years old. The State challenged Wilson’s race neutral reason for this peremptory challenge as pretextual, stating that Quick qualifies to serve on a jury upon reaching the age of twenty-one and that he, therefore, should be able to remain on the jury. The trial court also acknowledged that Wilson asked this juror no questions on individual voir dire. After considering the objection and the Wilson’s stated race-neutral purpose of the strike, the trial court reseated the juror, finding that Wilson provided insufficient race-neutral reasons for the strike. See Manning, 765 So.2d at 519 (¶ 9) (listing indicium of pretext and recognizing such indicium included a lack of record in support of the purported reason and also included reasons stemming from group-based traits). While the trial judge did not first articulate whether the reason of inexperience and youthful age constituted a race neutral reason on its face, a review of the record shows that the trial judge found Wilson’s race-neutral justification insufficient.
¶ 26. Upon a review of the record, we find no abuse of discretion in the trial court’s findings as to the Batson challenges raised by Wilson and no abuse of discretion in the trial court’s findings as to the challenges raised by the State in the context of the facts of this case. See id. at (¶ 8) (citing Thorson, 721 So.2d at 593 (¶ 4) (finding that we will not overrule a trial court on a Batson ruling unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence)).
¶ 27. With respect to the context of the Batson objections raised by Wilson, we note that Wilson failed to raise any Batson objections until after he had accepted the State’s tendered panel of jurors, and only after the State had challenged his strikes. In accordance with Uniform Rule of Circuit and County Court 4.05(B),[14] which provides that constitutional objections must be made at the time the panel is tendered, and Thomas v. State, 517 So.2d 1285, 1287-88 (Miss.1987), which explains that a Batson “objection is timely only where made prior to the impanelling of the jury,” we find that Wilson waived any Bat-son objections to the jurors that he had already accepted upon tender of the State.
¶ 28. With respect to the State’s Batson objections to Wilson’s strikes, we acknowledge that the trial judge constitutes the finder of fact in determining the credibility of the race-neutral reasons stated for the strike, and the trial judge certainly may evaluate the credibility of the strikes raised in the context of the case. See Manning, 765 So.2d at 520 (¶ 11) (cit *1156 ing Thorson, 721 So.2d at 597 (¶ 23) (holding that the trial judge’s determination of whether or not a reason constituted a race-neutral reason depended largely on the credibility of the prosecutor in that case who proffered the reasons)); see also Chisolm v. State, 529 So.2d 635, 688 (Miss.1988) (finding that the reasons for a strike must be related to the particular case and must be “clear and reasonably specific”).
¶ 29. We note that precedent requires that we give great deference to the trial court’s findings of whether or not a peremptory challenge was race neutral, see Manning, 765 So.2d at 519 (¶ 8); Booker, 5 So.3d at 358 (¶ 3); therefore, we find that the trial court committed no abuse of discretion in finding that Wilson failed to provide sufficient race-neutral reasons for his peremptory strikes. See Chisolm, 529 So.2d at 638 (citing Lockett, 517 So.2d at 1349-52) (providing that when reviewing a trial court’s ruling on Batson objections, appellate courts should use a limited standard of review). As such, this issue lacks merit.
III. JURY INSTRUCTIONS
¶ 30. In Wilson’s third assignment of error, he argues that Instruction S-4 improperly stated the law due to its peremptory effect on the element of whether Wilson possessed a position of trust or authority over Hughes. Wilson claims that this instruction charges the jury that Wilson holds a position of trust or authority over Wilson simply because of his status as her biological father. The crux of Wilson’s argument is that Instruction S-4 improperly relieved the jury from determining whether he held a position of trust or authority over his daughter simply upon presentation of proof of his parental status. Wilson argues that the law requires proof of a fiduciary position and authority, in addition to proof of his status as a parent. In response, the State contends that Wilson’s argument fails because the statute under which Wilson was convicted defines a person of trust or authority to include a parent.
¶ 31. We apply the following standard of review when reviewing challenges to jury instructions: “[i]n determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole; when so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” Brunner v. State, 37 So.3d 645, 648 (¶ 13) (Miss.Ct.App.2009) (quoting Davis v. State, 909 So.2d 749, 752 (¶ 11) (Miss.Ct.App.2005)). “This Court has ‘consistently held that instructions in a criminal case which follow the language of a pertinent statute are sufficient.’ ” Rubenstein v. State, 941 So.2d 735, 772 (¶ 155) (Miss.2006) (quoting Byrom v. State, 863 So.2d 836, 880 (¶ 163) (Miss.2003)).
¶ 32. In the present case, Instruction S-4 reads as follows:
The Court instructs the jury that should you find that the Defendant, Joseph Johnett Wilson, is the parent of [Teresa Hughes] then you must find that Defendant, Joseph Johnett Wilson was in a position of trust or authority over [Teresa Hughes].
After deliberation, the jury convicted Wilson of sexual battery under Mississippi Code Annotated section 97-3-95(2) (Rev. 2006), which provides:
A person is guilty of sexual battery if he or she engages in sexual penetration with a child under the age of eighteen (18) years if the person is in a position of trust or authority over the child including without limitation the child’s teacher, counselor, physician, psychiatrist, psychologist, minister, priest, physical therapist, chiropractor, legal guardian, *1157 parent, stepparent, aunt, uncle, scout leader or coach.
(Emphasis added).
¶ 33. After a plain reading of the statute, we find that Instruction S-4 tracks the language of the statute, and, in accordance with Rubenstein, the instruction is sufficient. Moreover, this Court has previously established that the State bears no burden in proving that the defendant actually cared for or controlled the minor victim in order to sustain a conviction for a charge of sexual battery in violation of section 97-3-95(2). See Blackmon v. State, 803 So.2d 1253,1255-56 (¶ 13) (Miss.Ct.App.2002). In Blackmon, we explained that the statutory requirements of section 97-3-95(2) are met if the defendant engages in sexual penetration with a child under the age of eighteen, and the defendant is in a position within the named classification of individuals who are in a position of trust or authority over such child. Id.; see also Singleton v. State, 16 So.3d 742, 745 (¶ 12) (Miss.Ct.App.2009) (finding penetration to be the only element of sexual battery at issue because the victim was under the age of eighteen and the defendant was the victim’s father); Carter v. State, 775 So.2d 91, 96 (¶ 22) (Miss.1999) (finding that a teacher in a school that a child of that age attends has a position of trust or authority over a child sufficient to fit within the meaning of section 97-3-95(2)).
¶ 34. In the case at bar, the jury found that Wilson had sexually penetrated his daughter, Hughes, a child under the age of eighteen years. In accordance with the applicable statute, the jury was properly instructed that if it found that Wilson possessed the status of the parent of Hughes, then the jury must find that he held a position of trust or authority over her.[15] Accordingly, relying on a plain reading of the statute under which Wilson was convicted, and also Mississippi precedent, we find no merit to his assertion that Instruction S-4 precluded the'jury from considering the elements of this crime as provided by section 97-3-95(2). Therefore, this argument is without merit.
IV. CLOSING ARGUMENT
¶ 35. Wilson asserts that the trial court erred by ruling that Wilson’s biblical references during the closing argument were improper.
¶ 36. We acknowledge that Mississippi Rule of Evidence 610 prohibits the use of a witness’s beliefs on religious matters for the purpose of attacking or enhancing credibility. We further note that Mississippi Rule of Evidence 611(a) “clearly recognizes the authority [of] the trial judge to ‘exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to ... make the interrogation and presentation effective for the ascertainment of the truth.’ ” Robinson v. State, 40 So.3d 570, 577 (¶ 27) (Miss.Ct.App.2009).[16] Similarly, *1158 we review a ruling by the trial court as to improper arguments by counsel under the following standard of review: “whether the natural and probable effect of the improper argument is to create unjust prejudice so as to result in a decision influenced by the prejudice so created.” Foley v. State, 914 So.2d 677, 687 (¶ 18) (Miss.2005) (quoting Burr v. Miss. Baptist Med. Ctr., 909 So.2d 721, 724-25 (¶7) (Miss.2005)). We further acknowledge that the trial judge holds the best position to make a determination as to whether the alleged objectionable remark has a prejudicial effect on the jury. Id. at 687-88. We note that, at trial, the trial court challenges the jury to follow the law and apply the law to the facts presented at trial and not upon passion or prejudice. See Shumpert v. State, 935 So.2d 962, 972 (¶ 38) (Miss.2006) (finding that attorneys are afforded wide latitude in arguing their cases to the jury at trial but are not allowed to use tactics which are “inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury”).
¶ 37. Wilson sought to reference a biblical passage in his closing argument for an evidentiary purpose of attacking his daughter’s credibility by using the conduct of Lot’s daughters from the Bible. After the State objected to the reading of the biblical passage, the trial court found the reference improper and excluded the statements. Wilson stated that the point of the biblical reference was to show that a daughter can sexually overcome the father.
¶ 38. In reviewing this intended use, we find that Wilson improperly sought to use this biblical reference in his closing argument solely for an evidentiary purpose and that no evidence had been introduced at trial to argue such as a reasonable inference. See Mendenhall v. State, 18 So.3d 915, 918-919 (¶¶ 14-18) (Miss.Ct.App.2009) (finding that the trial court properly excluded evidence offered by a party during closing argument for the first time); see also Walker v. State, 913 So.2d 198, 239 (¶ 153) (Miss.2005) (citing Evans v. State, 725 So.2d 613, 676 (¶271) (Miss.1997) (finding that figurative speech may be used if there is evidence upon which it may be founded; however, counsel must confine himself “to the facts introduced in evidence and to the fair and reasonable deduction and conclusions to be drawn therefrom and to the application of the law, as given by the court, to the facts”)). In this case, Wilson failed to present any evidence to support the argument that his daughter had sexually overcame him. Therefore, we find no error in the trial court’s exclusion of this biblical reference in Wilson’s closing argument. This issue lacks merit.
V. JURY VERDICT
¶ 39. In his next assignment of error, Wilson argues that the verdict was not supported by the weight of the evidence. However, within his argument, Wilson cites and applies case law regarding the legal sufficiency of the evidence.[17] *1159 Therefore, we will apply the legal sufficiency of the evidence standard in our review.
¶ 40. In Bush, the Mississippi Supreme Court explained the standard that appellate courts should use when reviewing claims regarding the legal sufficiency of the evidence. Bush, 895 So.2d 836, 843 (¶ 16) (Miss.2005). The supreme court stated the following:
[I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for [a] directed verdict or for [a] judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.” However, this inquiry does not require a court to
“ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.” Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citations omitted). Should the facts and inferences considered in a challenge to the sufficiency of the evidence “point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,” the proper remedy is for the appellate court to reverse and render. Edwards v. State, 469 So.2d 68, 70 (Miss.1985) (citing May v. State, 460 So.2d 778, 781 (Miss.1984)); see also Dy-cus v. State, 875 So.2d 140, 164 (Miss.2004) [ (vacated by Dycus v. Mississippi, 544 U.S. 901, 125 S.Ct. 1589, 161 L.Ed.2d 271 (2005))]. However, if a review of the evidence reveals that it is of such quality and weight that, “having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,” the evidence will be deemed to have been sufficient. Edwards, 469 So.2d at 70....

Id.

¶41. In the case at hand, the parties presented the jury with two varying theories on how Wilson’s DNA arrived inside of his daughter’s vagina. The victim, Hughes, and her father, Wilson, the only witnesses to the event, both testified to the jury about what happened on the night in question. We recognize that “[t]he credibility of witness testimony is the province of the jury.” Price v. State, 892 So.2d 294, 297 (¶ 15) (Miss.Ct.App.2004) (citations omitted). The jury considered the evidence and testimony presented by both parties and reached their verdict based on this information. Therefore, we find this assignment of error without merit.
VI. CUMULATIVE ERROR
¶ 42. In Wilson’s final assignment of error, he argues that the cumulative effect of all of the errors committed at trial combine to create a reversible error. “The cumulative error doctrine stems from the doctrine of harmless error which holds that individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial.” Thompson v. State, 990 So.2d *1160 265, 270 (¶ 12) (Miss.Ct.App.2008) (citing Harris v. State, 970 So.2d 151, 157 (¶ 24) (Miss.2007)). “However, reversal based upon cumulative error requires a finding or findings of error.” Id. Because we have found no error regarding Wilson’s conviction, harmless or otherwise, this issue is without merit.
¶ 43. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE AND ROBERTS, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT. MAXWELL, J., CONCURS IN RESULT ONLY. MYERS, J, NOT PARTICIPATING.

. In the interest of the minor child’s privacy, the minor’s name, as well as the names of her brother and mother, have been substituted with aliases.

. Wilson’s counsel fails to raise issue with this motion in limine in his brief. Therefore, this Court will not review this motion in limine on appeal. See Palmer v. Biloxi Reg'l Med. Ctr., Inc., 564 So.2d 1346, 1360 (Miss.1990) (citing Read v. S. Pine Elec. Power Ass'n, 515 So.2d 916 (Miss.1987)).

. This motion in limine was not addressed as an issue on appeal by Wilson's counsel. As such, this Court will not review this motion in limine. See Palmer, 564 So.2d at 1360.

.Wilson said that he expected Grant to testify that Hughes once lied when she told him that Horn had broken into her house when, in fact, she had voluntarily allowed him in her house. Furthermore, Wilson contended that Officer Travis would testify that Wilson had filed several police complaints against Horn and that Horn had made threats toward Wilson in response.

. We note that, at trial, Wilson stipulated that he is the biological father of Hughes.

. Wilson did not seek to call Helen to testify as to their previous sexual activities.

. Wilson claimed that these witnesses would testify: Horn had previously made threats toward Wilson; Hughes had lied to Horn's probation officer about seeing Horn volun *1152 tarily; Horn had threatened Hughes's brother and mother on previous occasions; and Horn once destroyed a woman’s property after her son had told Wilson about Horn's whereabouts.

. Because this Court has already ruled that the trial court abused no discretion in granting the State's third motion in limine, which operated to exclude any testimony concerning Horn, we will not re-address this argument for the second time but will, instead, uphold our earlier findings.

. The record reflects that Wilson did not call Jerome to testify in this case.

. Uniform Rule of Circuit and County Court 4.05 requires the defense to exercise any peremptory challenges it has at the time each panel is tendered.

. Uniform Rule of Circuit and County Court 10.01(b) provides that peremptory challenges are to be exercised in the same manner as provided in these rules for civil cases and that the prosecution is required to exercise its challenges first.

. We pause to note that after considering the objection and the reasons for the strike, the trial judge did not first state on the record whether he found the reason given by Wilson for the strike to be race neutral on its face before finding that the State had provided sufficient grounds to challenge Wilson’s purported non-discriminatory purpose that Wilson failed to rebut sufficiently.

. See also URCCC 10.01(b) (stating that the prosecution must exercise its peremptory challenges first).

. After considering the objection and the stated purpose of the strike, the trial court found that Wilson failed to provide a sufficient race-neutral justification for his strike without first articulating whether the reason provided by Wilson for the strike was race neutral on its face.

. We note that the parental position is specifically named in the classification of individuals listed in section 97-3-95(2) as persons who hold positions of trust or authority over a child.

. If in compliance with the Mississippi Rules of Evidence, counsel may otherwise draw upon religion, science, and literature. We have addressed the issue of biblical references most often in capital cases. See Carr v. State, 655 So.2d 824, 853 (Miss.1995). In Can, the Mississippi Supreme Court explained the acceptance of the use of biblical references in closing arguments by stating:
This Court has continually held that counsel is afforded broad latitude in closing argument. This latitude, set out by the Court in Nelms & Blum Co. v. Fink, 159 Miss. 372, 382-383, 131 So. 817, 820 (1930), has been referred to in the context of capital cases. In Nelms, we stated that ‘‘[c]ounsel may *1158 draw upon literature, history, science, religion, and philosophy for material for his argument.” Id. at 382-384, 131 So. 817. See Hansen v. State, 592 So.2d 114, 139-140 (Miss.1991); Shell v. State, 554 So.2d 887, 899 (Miss.1989), vacated on other grounds, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990); Johnson v. State, 416 So.2d 383, 391 (Miss.1982).
Carr, 655 So.2d at 853.

. In Wilson’s brief, he claims that the trial court should have granted a new trial; however, his argument addresses his motion for a judgment notwithstanding the verdict, which we review for the legal sufficiency of the evidence. See Bush v. State, 895 So.2d 836, 843-44 (¶¶ 16-18) (Miss.2005) (outlining the differences between legal sufficiency of the evidence and the weight of the evidence).