ON WRIT OF CERTIORARI

LAMAR, Justice,
for the Court:
¶ 1. David Campbell was convicted of fondling a minor over whom he held a position of trust or authority under Mississippi Code Section 97-55-23(2) (Rev.2006). The Court of Appeals reversed and ren *49 dered Campbell’s conviction, finding that “the State failed to prove that Campbell occupied a position of trust or authority as defined by section 97-5-23(2).”[1] We granted certiorari and, finding no merit in Campbell’s assignments of error, we reverse the Court of Appeals and reinstate and affirm Campbell’s conviction and sentence.
FACTS AND PROCEDURAL HISTORY
¶ 2. Lauren, a minor with a history of abuse,[2] entered treatment at Millcreek of Pontotoc (“Millcreek”) when she was sixteen years old.[3] Although Lauren was in the legal custody of the Jackson County Department of Human Services and her physical placement was with Millcreek, one of her therapists, Kitty Campbell, along with her husband, David Campbell, agreed to take physical custody of Lauren. Lauren moved in with the Campbells and their two biological children in the spring of 2006. Lauren’s social worker, Gloria Mc-Arthur, testified that Lauren was physically placed with the Campbells while they were in the process of being licensed as foster parents, that the Campbells had physical custody of Lauren, and that they were treating her as one of their own children until they could be licensed. Specifically, McArthur testified as follows:
Q: Mrs. McArthur, were the Campbell’s [sic] in 2006, what was their status regarding [Lauren], do you know?
A: Yes, I remember that. By Mrs. Campbell being [Lauren’s] counsel- or and she was talking back and forth constantly between my supervisor Matt Matthews and myself. So my supervisor Matt decided that since she was a counselor at Mill-creek while going through the process of becoming license [sic] foster parent that it would be okay for [Lauren] to visit, to, you know, just be treated as one of their own children until we can get the finalization of her placement with them. So they had physical custody of [Lauren],
While living with the Campbells, Lauren had her own bedroom and was allowed to have friends over with permission. The Campbells imposed rules on Lauren, such as curfew, limiting television, and taking her phone away when she ran up the bill, and even took Lauren on vacation with their family. On the way home from a vacation, Lauren got into an argument with the Campbells’ son, after which Lauren moved back into the Millcreek facility as a residential patient on August 17, 2006.
¶ 3. On September 9, 2006, less than one month after Lauren moved back to Mill-creek, David Campbell came to visit her at lunch one day. Lauren testified that she and Campbell talked and kissed during his visit. While Lauren and Campbell were visiting on the Millcreek grounds, a group of food service workers observed what they felt was inappropriate behavior. According to the workers, Campbell and Lauren behaved in a manner suitable to boyfriend/girlfriend, not a father and his *50 daughter. There was also testimony that Campbell and Lauren moved their conversation to a truck in the parking lot, that it appeared they were kissing (although no workers actually saw a kiss), and that traffic on the main road slowed as passing motorists watched Campbell and Lauren’s interaction. The workers reported what they saw to a Millcreek supervisor, and Campbell’s visit was cut short.
¶ 4. After Campbell’s visit, Lauren was interviewed by one of her therapists, Leslie May, and Investigator Leland McDi-vett. Lauren initially denied an inappropriate relationship with Campbell. Lauren eventually reported that she and Campbell had been engaged in a consensual sexual relationship since the first week she had been in his custody. Lauren testified that she believed that Campbell was forty-two years old at the time their affair started. Lauren further testified that she loved Campbell and believed that he loved her, that she and Campbell kissed, touched, and had intercourse almost every day, and that Campbell had given her an engagement ring and promised to marry her one day.
¶ 5. May testified that Lauren had been living with her foster family, the Camp-bells, prior to moving into Millcreek. May repeatedly referred to the Campbells as Lauren’s foster family, and testified that they had been included in family counseling sessions. The record further reveals that Kitty Campbell signed Lauren’s “family review of master treatment plan” sign-in sheet as Lauren’s parent/guardian on September 1, 2006. May- testified that Lauren eventually reported during therapy that Lauren and David Campbell had touched, kissed, bathed together, and had sexual intercourse multiple times while she lived with him. May additionally testified that Lauren was very upset after the investigation into her relationship with Campbell began because she felt that she had been abandoned by her family; ie., the Campbells.
¶ 6. One of Lauren’s friends also testified that she had seen Campbell “french kiss” Lauren when spending the night with her at the Campbells’ home. The friend testified that Campbell kissed Lauren “as if she was his wife.” The friend further testified that Lauren later told her that she and Campbell were going to have sex, and that she went outside so that Lauren and Campbell could “go ahead” and have sex. The friend testified that, when she returned, Lauren was wearing lingerie with no bottoms and that she had what appeared to be semen on her body. The friend testified that Lauren indicated the semen was Campbell’s. Lauren also testified about the night’s events, corroborating the sexual activities and the kiss, although her account varied in some of the details.
¶ 7. Campbell was indicted for one count of fondling a minor over whom he held a position of trust or authority under Mississippi Code Section 97-5-23(2) and one count of sexual battery of a minor by a person in a position of trust and authority under Mississippi Code Section 97-3-95(2). The indictment charged that the crimes occurred between the first day of May 2006 and the ninth day of August 2006 and that Campbell’s position over Lauren was, “to-wit, the child’s foster parent.” After a trial, the jury returned a guilty verdict on the charge of fondling and an acquittal on the charge of sexual battery.[4] Campbell appealed, arguing that his conviction and sentence should be reversed and rendered or, alternatively, he should be granted a new trial, because (1) the State failed to prove he was the legal guardian or foster father of Lauren; (2) he was never identified to the jury as the perpetrator of the *51 crime; (B) his age was never proven; (4) the verdict was against the overwhelming weight of the evidence; and (5) the trial court erred in granting jury instruction number nine.
¶ 8. We assigned the case to the Court of Appeals. The Court of Appeals found that .the State had failed to prove that Campbell was “Lauren’s foster father as alleged in the indictment.”[5]. The Court of Appeals concluded that, “[bjecause there is no evidence to support the allegation that Campbell held a position of trust or authority over Lauren, we find the jury could not have found all the elements of the crime of fondling beyond a reasonable doubt.”[6] Therefore, the Court of Appeals reversed and rendered Campbell’s conviction and sentence. Because it found the issue of whether the State had proven that Campbell was Lauren’s foster father dis-positive, the Court of Appeals did not reach the other issues Campbell raised on appeal.
¶ 9. We granted certiorari. We find that there was sufficient evidence that Campbell was in a position of trust or authority over Lauren and we also address the remaining assignments of error.
DISCUSSION
I. The circuit court properly denied Campbell’s motions for directed verdict and judgment notwithstanding the verdict.
¶ 10. Motions for directed verdict and judgment notwithstanding verdict (JNOV) “challenge the legal sufficiency of the evidence.”[7] “Since each requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the trial court.”[8] “In appeals from an overruled motion for JNOV, the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State.”[9] “We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.”[10]
A. There was sufficient evidence that Campbell was in a position of trust or authority over Lauren.
¶ 11. To be convicted under Section 97-5-23(2), the State must prove that the person charged was in a position of trust or authority over the minor at the time the crime occurred.[11] The statute includes a nonexhaustive list of the type of positions that would qualify as a person in a position of trust or authority over a child as follows: “A person in á position of trust or authority over a child includes without limitation a child’s teacher, counselor, physician, psychiatrist, psychologist, minister, priest, physical therapist, chiropractor, legal guardian, parent, stepparent, aunt, *52 uncle, scout leader or coach.”[12] The list of enumerated positions merely provides examples of positions that would fit the statute, and is not intended to limit the circumstances under which a person could be found to be in a position of trust or authority over a minor.
¶ 12. Campbell argues sufficient evidence was not presented at trial to allow the jury to find that he was Lauren’s foster father or that he occupied a position of trust or authority over Lauren; therefore, he argues that his conviction must be reversed. The Court of Appeals found that there was no evidence that Campbell was Lauren’s foster parent or legal guardian, that there was no evidence in the record that the Campbells had any control over Lauren or her care, and that Lauren was merely a visitor in the Campbell’s home. We disagree.
¶ 13. Section 97-5-23(2) does not limit the categories of people who can be found to be in a position of trust or authority over a minor to those who have a legal relationship with the child or who hold some license or certification, but rather provides a general list of examples to be considered when determining whether a person does hold a position of trust or authority over a certain child. In support of its conclusion that Campbell was not in a position of trust or authority over Lauren, the Court of Appeals noted that the enumerated positions included in Section 97-5-23 all require, or generally require, a certifícate or license. However, this reasoning focuses on the status of the accused only, and not on the relationship between the accused and the victim. Certainly, merely holding a license as a foster parent or counselor or other licensed position does not place one in a position of trust or authority over every minor — the statute clearly states that the accused must be the child’s counselor, coach, etc.
¶ 14. Additionally, while many teaching and coaching positions do require certification, not all do. We doubt that anyone would argue a school teacher is not in a position of trust or authority over his or her student, simply because he or she does not have a teaching certificate or license. Thus, while a determination of whether Campbell was Lauren’s licensed foster parent or legal guardian is a good starting point for analysis, it is not the end of the discussion. To determine whether there was sufficient evidence for a jury to determine that Campbell was in a position of trust or authority over Lauren, we look to all the evidence presented and the totality of the circumstances, not just to Campbell’s legal position.
¶ 15. Although Campbell was not a licensed foster parent, we find that there was sufficient evidence for the jury to determine that Campbell was in a position of trust or authority over Lauren because he acted as her de facto foster parent. Black’s Law Dictionary defines “de facto” in the first instance as “actual; existing in fact; having effect even though not formally or legally recognized.”[13] Black’s further defines “foster parent” as “an adult who, though without blood ties or legal ties, cares for and rears a child, especially an orphaned or neglected child who might otherwise be deprived of nurture.”[14] In this case, there was clear evidence that Campbell actually cared for Lauren, a neglected child with whom he had no blood *53 or legal ties, even though he was not licensed as her foster father.
¶ 16. Lauren testified that she believed Campbell was her foster father, that she lived with the Campbells for several months, that she had her own bedroom in the Campbells’ residence, that she was allowed to have a friend over to spend that night with her while living with the Camp-bells after she asked permission, that she went on family vacations with the Camp-bells, and that the Campbells imposed rules on her, such as giving her a curfew; taking away her cell phone when she ran up the bill, and limiting her television. Lauren’s social worker testified that Lauren was physically placed with the Camp-bells while they were in the process of being licensed as foster parents, and that the Campbells had physical custody of Lauren and were treating her as one of their own children until they could be licensed. May, Lauren’s therapist, repeatedly referred to the Campbells as Lauren’s foster family, included the Camp-bells in family counseling sessions, and testified that Lauren considered the Campbells her family. Furthermore, the State presented a copy of a message sent by Campbell to Lauren via her My Space account in which he referred to her as his daughter. It is clear that Lauren was much more than a visitor in Campbell’s home.
¶ 17. We find that there was sufficient evidence for the jury to conclude that Campbell was in a position of trust or authority over Lauren at the time the crime occurred. This issue is without merit.
B. There was sufficient evidence that Campbell was the perpetrator of the crime.
¶ 18. Campbell further argues that there was not sufficient evidence for the jury to convict him because he was never identified as the perpetrator of the crime, and that no evidence was presented that Campbell, the defendant, was the same person as Campbell, the alleged perpetrator of the crime. Investigator McDivett testified regarding his investigation of the reported inappropriate lunchtime activity as follows:
Q: Investigator McDivett, I had just handed you what has been marked as State’s exhibit 1 for identification purposes, can you tell the jury what that document is?
A: Yes, ma’am. It’s a My Space copy of the My Space account that was printed with the words Dave and a picture of Mr. Campbell, the defendant, on it and it says ‘my true story or the true story I told’, and it’s marked September 12, 2006.
Q: Did you obtain that document from the My Space account of [Lauren]?
A: I did.
McDivett additionally testified regarding his interrogation of Campbell as follows:
Q: Where did the interview take place?
A: In a hotel in Southaven.
Q: Was the defendant placed under arrest or any type of custody during the interview?
A: No ma’am, it was a non-custodial interview.
Q: How did the defendant react in your interview with him regarding the allegations made at Millcreek by [Lauren]?
A: He denied everything.
McDivett testified at length as to his investigation of Campbell and his discovery that Lauren and Campbell were involved in a sexual relationship. It is clear from his testimony that he was referring to David Campbell, the defendant.
¶ 19. We have stated:
*54 The character and adequacy of evidence of identification of an accused in a criminal case is primarily a question for the jury, provided the evidence could reasonably be held sufficient to comply with the requirement of proof beyond a reasonable doubt. The jury need not be controlled by the number of witnesses testifying to the identification of an accused. Identification based on the testimony of a single witness, if complying with the standard in criminal cases, can support a conviction.... [15]
The jury heard McDivett repeatedly testify that he had investigated. David Campbell, the defendant, based upon Lauren’s allegations, and that he had concluded there was a sexual relationship between the two. Furthermore, the jury heard several witnesses testify regarding the sexual relationship between Lauren and David Campbell, including Lauren herself. Even though not every witness specifically identified David Campbell as the defendant, there was sufficient evidence from the testimony as a whole for the jury to conclude that David Campbell, the defendant, was David Campbell, the alleged perpetrator of the crime. This issue is without merit.
C. There was sufficient evidence that Campbell was over the age of eighteen at the time he committed the crime.
 ¶ 20. Another essential element that must be proven for a defendant to be convicted under Section 97-5-23(2) is that the defendant was over the age of eighteen at the time the crime occurred. The State bears the burden of proving a defendant’s age as “an affirmative fact.”[16] Campbell, who does not claim that he was under the age of eighteen at the time of the crime and was in fact forty-two years old, argues that the State failed to prove this element at trial. Specifically, Campbell argues that the only evidence presented to the jury regarding his age is Lauren’s testimony that she “believed” Campbell to be forty-two years old at the time of the crime, and that such testimony is not credible.
¶21. During its direct examination of Lauren, the State asked Lauren how old Campbell was when she lived with and engaged in a sexual relationship with him. Lauren replied, “I believe he was forty-two.” We have held that similar testimony is sufficient to prove a defendant’s age. In Crenshaw v. State, the defendant argued that the State had failed to prove he was over the age of eighteen and, therefore, had failed to prove an essential element of the crime of gratification of lust under Mississippi Code Section 97-5-23.[17] In determining there was no merit to defendant’s argument, we explained that one of the State’s witnesses, a close friend of the defendant, had testified “I think he’s thirty-eight (38).”[18] We held that such testimony established defendant’s age by competent evidence.[19]
¶ 22. We find that there was sufficient evidence for the jury to determine that Campbell was over the age of eighteen at the time the crime occurred. This issue is without merit.
II. The trial court properly denied Campbell’s motion for a new trial.
¶ 23. “A motion for a new trial challenges the weight of the evidence. A *55 reversal is warranted only if the trial court abused its discretion in denying a motion for a new trial.”[20] “We will disturb a verdict only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”[21] “[T]he evidence should be weighed in the light most favorable to the verdict.”[22]
¶ 24. Campbell did not testify and did not call any witnesses. Campbell argues that the trial court erred in denying his motion for a new trial because the jury’s verdict rests only on the testimony of Lauren and her friend, and that neither girl’s testimony was credible, because Lauren gave conflicting stories to investigators and because Lauren’s and her friend’s testimony differed on certain details. However, “it is the role of the jury to evaluate the veracity of the witnesses.”:[23] Based on the evidence previously discussed, we find that the verdict was not contrary to: the overwhelming weight of the evidence and that the trial court properly denied Campbell’s motion for a new trial. This issue is without merit.
III. The trial court did not err in giving jury instruction number nine.
¶ 25. “Jury instructions are within the discretion of the trial court and the settled standard of review is abuse of discretion.”[24] “The jury instructions are to be read as a whole, with no one instruction to be read alone or taken out of context.”[25] “When read together, if the jury instructions state the law of the - case and create no injustice, then no reversible error will be found.”[26]
¶26. Campbell argues that the trial court erred in giving jury instruction number nine because subsections 3(b) and 3(c) are not supported by Mississippi law. Instruction number nine instructed the jury in relevant part that it should, find Campbell guilty if it found that he:
3. For the purpose of gratifying his lust or depraved licentious sexual desires did either of the following, with or without the consent of [Lauren] ...
(b) passionately kiss [Lauren] while groping her body with his hands; or
(c) passionately kiss [Lauren].
Campbell argues these subsections singled out and gave undue prominence to certain evidence and also invited the jury to speculate that the kiss was done with the purpose of satisfying Campbell’s lust. The State argues that Campbell did not raise these specific objections at trial and is, therefore, procedurally barred from seeking appellate review of these issues. Alternatively, the State argues that instruction number nine was properly given.
¶ 27. Campbell objected at trial to instruction number nine (proposed instruction S — 2) in relevant part as follows:
[Counsel for Campbell]: Yes, sir. I don’t think that subsection c should be ■ included at all as stated there. I don’t *56 think that is the law. I mean and it’s duplicative of subparagraph b.
[Counsel for the State]: Your Honor, ... there is no other reason other than fondling to kiss a minor in your care and there was testimony that it was done, open mouth kiss. I don’t have to establish that there was actually groping in order to establish a charge of fondling.
[Counsel for Campbell]: I disagree, I know of no authority that would support that jury instruction as specifically pointing out the passionately kiss. And if their position is, and I also think it’s duplicative of subsection b.
[Counsel for the State]: It’s either or. There was evidence that there was groping and there was evidence that there was a kiss on two different occasions.
By the Court: Anybody have any law of where passionate is—
[Counsel for the State]: I have law and I will grab it. It says a kiss with evidence of other licentious sexual desires is enough evidence to prove a charge of fondling. And we have other evidence of a relationship existing between these two individuals.
By the Court: Well, what about passionate kiss and added that with other, where were the other licentious.
[Counsel for the State]: It requires for the purpose of gratifying his lust or depraved licentious desires.
By the Court: I am going to grant that instruction. We will give it.
¶ 28. The record reveals that Campbell did not specifically object to instruction number nine on the basis that it required the jury to assume or speculate that the kiss was done for the purpose of gratifying Campbell’s lust. Therefore, this specific assignment of error is procedurally barred from our review.[27] This assignment of error is without merit.
¶ 29. The record further reveals that Campbell objected to instruction number nine in part on the basis that it “pointed out the passionate kiss.” However, Campbell did not specify why pointing out the kiss would be improper and did not argue to the trial judge that including “passionately kissed” in the instruction would “give undue prominence to certain portions of the evidence.” Rather, it appears the discussion regarding instruction number nine dealt with whether a kiss could support a conviction for fondling and whether subsection (c) was duplicative of subsection (b). Campbell did not specifically object at trial to instruction number nine on the same grounds he now raises on appeal.[28] We find that this assignment of error is procedurally barred and without merit.[29]
CONCLUSION
¶ 30. For the reasons discussed above, the judgment of the Court of Appeals is reversed, and David Campbell’s conviction and sentence are reinstated and affirmed.
¶ 31. THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED. *57 CONVICTION OF FONDLING A MINOR AND SENTENCE OF SEVEN (7) YEARS, WITH FIVE (5) YEARS SUSPENDED, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. UPON RELEASE APPELLANT SHALL BE PLACED ON TWO (2) YEARS OF POST RELEASE SUPERVISION.
WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR. CHANDLER, J„ SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J.

. Campbell v. State, 125 So.3d 58, 59 (Miss.Ct.App.2012).

. We use the same fictitious name as used by the Court of Appeals to protect the victim’s identity.

. Millcreek is a psychiatric treatment facility offering residential, day, and outpatient therapy services for patients between the ages of six and twenty-one. Millcreek is accredited by the Joint Commission, the Division of Medicaid, the Department of Education, and the Department of Human Services. Referrals are made by family members, mental-health facilities, acute-care facilities, service agencies, and school districts. See www.millcreek ofpontotoc.com (July 31, 2013).

. The jury was instructed that it had to find that Campbell was in a position of trust or authority over [Lauren] as her foster parent to find Campbell guilty of fondling.

. Id. at 62-63.

. Id.

. McClain v. State, 625 So.2d 774, 778 (Miss.1993).

. Id.

. Id. (citations omitted).

. Id. (citations omitted).

. Section 97-5-23 has two subsections. Under subsection one, the victim must be under the age of sixteen. Subsection two applies when the victim is between the ages of sixteen and eighteen. Miss.Code Ann. § 97-5-23 (Rev.2006). As Lauren was sixteen at the time of the offense, Campbell was charged under subsection two.

. Miss.Code Ann. § 97-5-23(2) (Rev.2006) (emphasis added).

. Black's Law Dictionary 183 (2d pocket ed.2001).

. Id. at 511-12.

. Mamon v. State, 724 So.2d 878, 881 (Miss.1998).

. Crenshaw v. State, 520 So.2d 131, 133 (Miss.1988).

. Id.

. Id. at 134.

. Id.

. Horton v. State, 919 So.2d 44, 50 (Miss.2005) (citations omitted).

. Bush v. State, 895 So.2d 836, 844 (Miss.2005) (citation omitted).

. Id. (citation omitted).

. Montana v. State, 822 So.2d 954, 965 (Miss.2002) (citation omitted).

. Bailey v. State, 78 So.3d 308, 315 (Miss.2012) (citing Newell v. State, 49 So.3d 66, 73 (Miss.2010)).

. Bailey, 78 So.3d at 315 (citing Young v. State, 891 So.2d 813, 819 (Miss.2005) (citing Howell v. State, 860 So.2d 704, 761 (Miss.2003))).

. Bailey, 78 So.3d at 315 (citing Newell, 49 So.3d at 73) (citing Rubenstein v. State, 941 So.2d 735, 784-85 (Miss.2006))).

. Morgan v. State, 741 So.2d 246, 253 (Miss.1999) ("in order to preserve a jury instruction issue on appeal, a party must make a specific objection to the proposed instruction in order to allow the lower court to consider the issue”).

. Id. ("an objection on one or more specific grounds constitutes a waiver of all other grounds”) (citations omitted).

. Id.