GREENLEE, J., FOR THE COURT:
*1028 ¶ 1. Owen Scarbrough challenges his conviction for one count of fondling and two counts of sexual battery of his step-granddaughter.
¶ 2. On appeal, he alleges that: (1) the weight of the evidence does not support his Count I and Count II guilty verdict; and (2) the evidence is insufficient to show that he held a position of trust or authority over his step-granddaughter for his Count III guilty verdict.
FACTS AND PROCEDURAL HISTORY
¶ 3. Seventeen-year-old Mary[1] packed her suitcase to visit her grandmother and step-grandfather-Dorothy and Owen Scarbrough-in Shelby, Mississippi. As she packed, she quietly handed her father a note. It read:
Daddy
I have something I need to tell. You may get upset but please hear me out on this. Every time at grandma Dorothy's, when no adult are around or everyone's sleep in the house. Owen will tease, flirt and eventually takes off all my clothes. And then, he will begin fingering and suck on my [breast] to pleasure me. I really don't like this at all. I'm afraid if I don't let him, he will do something to harm. I know you taught me better but you never prepare me to handle this like this. I don't know what to do. Can you please help me?
¶ 4. Mary's alarmed mother contacted the sheriff's department in Bolivar County, Mississippi. Mary then described three incidents to the interviewing officer:
(1) when she was fourteen-years-old, Scarbrough brought her to a shack in his backyard where he lifted up her bra and sucked on her breasts;
(2) when she was fifteen-years-old, Scarbrough lifted up her shirt, sucked on her breasts, and digitally penetrated her; and
(3) when she was seventeen-years-old, Scarbrough brought her into the den of his home where Mary performed oral sex on him.
¶ 5. After Mary made the allegations, the department's investigator, Michael Williams, referred Mary to a children's forensic medical center where she saw a therapist. Investigator Williams then questioned Scarbrough and compiled a report, which indicated that Scarbrough admitted to sexual contact with Mary but disputed the details and time frame.
¶ 6. The grand jury indicted Scarbrough for three counts that tracked the three incidents described by Mary:
Count I: fondling ( Mississippi Code Annotated section 97-5-23 );
Count II: sexual battery of a child between fourteen and sixteen years of age ( Mississippi Code Annotated section 97-3-95(1) ); and
Count III: sexual battery of a child under eighteen years of age where the person is in a position of trust or authority ( Mississippi Code Annotated section 97-3-95(2) ).
¶ 7. At the November 2016 trial, three witnesses testified: Mary; Mary's mother; and Investigator Williams. Mary testified about her note to her father, the three distinct incidents during which Scarbrough engaged in sexual contact with her, and her relationship with Scarbrough. Mary's mother testified about her decision to contact the police based on Mary's note, Mary's shy and withdrawn personality, and Scarbrough's closeness to the family as a grandfather figure. Investigator *1029 Williams testified about Mary's complaint, his referral of Mary to the forensic center, and his interview of Scarbrough.
¶ 8. The jury found Scarbrough guilty on all three counts. For Count I, the circuit court sentenced him to fifteen years in the Mississippi Department of Corrections' (MDOC) custody with five years suspended and ten years to serve, and a $1,000 fine. For Count II, the circuit court sentenced him to thirty years in MDOC's custody with fifteen years suspended and fifteen years to serve, and a $1,000 fine. For Count III, the circuit court sentenced him to thirty years in MDOC's custody with ten years suspended and twenty years to serve, and a $1,000 fine. All sentences are to run consecutively.
¶ 9. Scarbrough moved for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the circuit court denied. He appeals, asserting that: (1) the weight of the evidence does not support his Count I and Count II guilty verdict; and (2) the evidence is insufficient to show that he held a position of trust or authority over Mary for his Count III guilty verdict.
DISCUSSION
I. Does the weight of the evidence support Scarbrough's Count I and Count II guilty verdict?
¶ 10. When reviewing a challenge to the weight of the evidence, the Court will disturb a jury verdict only "when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Little v. State , 233 So.3d 288, 291 (¶ 21) (Miss. 2017) (quoting Bush v. State , 895 So.2d 836, 843 (¶ 18) (Miss. 2005) ). We review the evidence in the light most favorable to the verdict. Roberts v. State , 229 So.3d 1060, 1068 (¶ 29) (Miss. Ct. App. 2017).
¶ 11. Scarbrough argues that the verdict was against the overwhelming weight of the evidence because there was no physical evidence or corroborating testimony. He asserts that Mary's claims were "unreliable and unbelievable."
¶ 12. The State presented testimony from Mary in which she described her note to her father, the three distinct incidents during which Scarbrough engaged in sexual contact with her, and her relationship with Scarbrough. Our supreme court has noted that "the totally uncorroborated testimony of a rape victim is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other evidence." Christian v. State , 456 So.2d 729, 734 (Miss. 1984). Mary's testimony itself is sufficient to find Scarbrough guilty. Furthermore, Mary's mother and Investigator Williams testified. Their testimony detailed Mary's mother's decision to contact the police, Mary's complaint and Investigator Williams's interview of Scarbrough. Scarbrough cross-examined each witness but called none of his own. "It is the jury's job to balance the weight and credibility of the witnesses." Latiker v.State , 918 So.2d 68, 73 (¶ 12) (Miss. 2005) (citing Shamblin v. State , 601 So.2d 407, 412 (Miss. 1992) ). We find that the verdict is not so contrary to the overwhelming weight of the evidence that allowing it to stand would sanction an unconscionable injustice. Therefore, the circuit court did not err in denying Scarbrough's motion for a JNOV or, in the alternative, a new trial.
II. Is evidence sufficient to show Scarbrough held a position of trust or authority over Mary for his Count III guilty verdict?
¶ 13. To determine whether evidence is sufficient to sustain a guilty verdict, we "will consider the evidence in the light most favorable to the State, giving *1030 the State 'the benefit of all favorable inferences that may reasonably be drawn from the evidence.' " Jones v. State , 991 So.2d 629, 634 (¶ 11) (Miss. Ct. App. 2008) (quoting Collier v. State , 711 So.2d 458, 461 (¶ 11) (Miss. 1998) ). "The relevant question then becomes whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " Id. (quoting Bush , 895 So.2d at 843 (¶ 16) ).
¶ 14. On Count III, the jury was instructed on the crime of sexual battery of a child under eighteen years of age where the person is in a position of trust or authority. The crime stems from Mississippi Code Annotated section 97-3-95(2), which reads:
A person is guilty of sexual battery if he or she engages in sexual penetration with a child under the age of eighteen (18) years if the person is in a position of trust or authority over the child including without limitation the child's teacher, counselor, physician, psychiatrist, psychologist, minister, priest, physical therapist, chiropractor, legal guardian, parent, stepparent, aunt, uncle, scout leader or coach.
(Emphasis added). Our supreme court stated that this list of possible positions of trust or authority is not exhaustive and "merely provides examples of positions that would fit the statute ...." Campbell v. State , 125 So.3d 46, 52 (¶ 11) (Miss. 2013). To resolve whether a person holds one of those positions, we "look to all the evidence presented and the totality of the circumstances ...." Id. at (¶ 14).
¶ 15. Scarbrough argues that the State failed to prove that he occupied a position of trust or authority over Mary, as required by section 97-3-95(2). He asserts that he was not "baby-sitting Mary at the time he engaged in oral sex," that Mary's mother was solely responsible for her, and that Mary was simply a guest in his home.
¶ 16. But the State presented significant evidence to the contrary: Mary referred to Scarbrough as her "step-grandfather"; Mary spent the first year of her life in Scarbrough's home; Mary treated Scarbrough in the same manner she treated Scarbrough's wife, her biological grandmother; Scarbrough walked Mary's mother down the aisle at her wedding instead of her biological father. Our supreme court noted that "[t]he jury is the sole judge of the weight of the evidence and the credibility of the witnesses." Lima v. State , 7 So.3d 903, 910 (¶ 35) (Miss. 2009) (quoting Mohr v. State , 584 So.2d 426, 431 (Miss.1991) ). It is our conclusion, therefore, that a rational trier of fact could find, under the totality of the circumstances, that Scarbrough did in fact hold a position of trust or authority over Mary. The circuit court did not err in denying his motion for a JNOV or, in the alternative, a new trial.
CONCLUSION
¶ 17. We find that the weight of the evidence supported Scarbrough's Count I and Count II guilty verdict and that the evidence was sufficient to show Scarbrough held a position of trust or authority over Mary for his Count III guilty verdict. Thus, we affirm the circuit court's judgment.
¶ 18. AFFIRMED.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, WESTBROOKS AND TINDELL, JJ., CONCUR.

To protect the victim's privacy, we use a fictitious name.