# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-KA-01250-SCT

*GEORGE V. HAWKINS a/k/a GEORGE VERLON*
*HAWKINS a/k/a GEORGE VERLON HAWKINS,*
*JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/22/2022 |
| TRIAL JUDGE: | HON. MICHAEL PAUL MILLS, JR. |
| TRIAL COURT ATTORNEYS: | RICHARD D. BOWEN |
| | JOHN R. WHITE |
| | CLAY SPENCER NAILS |
| | CLAYTON MATTHEW CUMMINGS |
| | RAYMOND G. O'NEAL, III |
| | KYLE DAVID ROBBINS |
| | JOHN DAVID WEDDLE |
| | NICHOLAS RYAN BAIN |
| | MEGAN DIANE FRENCH |
| COURT FROM WHICH APPEALED: | TISHOMINGO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CASEY BONNER FARMER |
| DISTRICT ATTORNEY: | JOHN DAVID WEDDLE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/11/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. A grand jury indicted George Hawkins for sexual battery under Mississippi Code

Section 97-3-95(2). The charge required the State to prove beyond a reasonable doubt that

he sexually penetrated a child while in a position of trust or authority over the child. A jury found him guilty, and Hawkins now appeals on the ground that the State failed to present sufficient evidence that he was in a position of trust or authority because he had no legal authority over the child. Because a reasonable jury could have found that Hawkins was in a position of trust or authority over the child based on the totality of the circumstances and in the absence of a legally defined relationship, we affirm his conviction.

## FACTS AND PROCEDURAL HISTORY

¶2.     In 2014, George Hawkins started dating Tonya Ingram. During the course of the year, Hawkins gradually became part of Tonya's and her children's lives until he was attending their family Christmases, and the couple considered themselves to be common-law married. As such, Tonya and her children moved into Hawkins's home, in her words, "as a family" in the spring of 2015. The couple filed their taxes jointly, Hawkins claimed Tonya's children as dependents, the couple contributed equally to the family's finances, and Hawkins wrote a letter conveying his intent to leave his estate to Tonya's children. Jane,[1] one of Tonya's children, testified that she respected Hawkins and trusted him. Jane's trust in Hawkins ended, however, when he entered her room one night around two o'clock in the morning and raped her. Jane was sixteen.

¶3.     Jane testified that she was in shock and froze while Hawkins assaulted her. She did not immediately call for help when Hawkins finally stopped raping her after he said he was "too drunk" because she knew he owned a gun and was roaming around the house. In the

---

[1]Because this case involves an allegation of misconduct against a minor, a pseudonym is used to protect the minor's identity.

morning, however, Jane left a note for her brother explaining what had happened and asking him to tell their mother to call the police. Thereafter, she went to school and had her boyfriend pick her up. Jane told her boyfriend's mother what happened, and she was taken to the hospital. At the hospital, a rape kit was performed, and hospital staff alerted Tishomingo County police.

¶4. DNA results established that Hawkins had indeed sexually penetrated Jane, and he was charged with sexual battery of a minor under Mississippi Code Section 97-3-95(2). Hawkins was found guilty and was sentenced to thirty years' imprisonment. Hawkins appealed on the basis that the State failed to present sufficient evidence that he was in a "position of trust or authority" over Jane as prescribed by Section 97-3-95(2).

## ANALYSIS

¶5. Under Section 97-3-95(2), the State had the burden of proving beyond a reasonable doubt that Hawkins sexually penetrated a minor while he was in a position of trust or authority over the minor. On appeal, Hawkins argues only that the State failed to present sufficient evidence that he was in a position of trust or authority as required under Section 97-3-95(2).

¶6. When the sufficiency of the evidence is challenged on appeal, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶ 16) (Miss. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)), *abrogated on other grounds by Little v. State*, 233

So. 3d 288, 291 (¶ 15) (Miss. 2017).  Further, the Court should only reverse if, "with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *Campbell v. State*, 125 So. 3d 46, 51 (¶ 10) (Miss. 2013) (internal quotation mark omitted) (quoting *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)).  Thus, in the present case, because a rational juror could have found beyond a reasonable doubt that Hawkins was in a position of a trust or authority over Jane, the Court affirms the jury's verdict.  *See Eubanks v. State*, 341 So. 3d 896, 910 (¶ 41) (Miss. 2022).

¶7.    Mississippi Code Section 97-3-95(2) states:

> (2) A person is guilty of sexual battery if he or she engages in sexual penetration with a child under the age of eighteen (18) years if the person is in a position of trust or authority over the child *including without limitation* the child's teacher, counselor, physician, psychiatrist, psychologist, minister, priest, physical therapist, chiropractor, legal guardian, parent, stepparent, aunt, uncle, scout leader or coach.

Miss. Code Ann.§ 97-3-95(2) (Rev. 2014) (emphasis added).

¶8.    Hawkins insists that he was merely Tonya's "live-in boyfriend," so his role in the home did not rise to the level of trust or authority over Jane as required by the statute.  The State, on the other hand, urges the Court to focus on the entirety of the circumstances and the relationship between Hawkins and Jane, not just the fact that Hawkins had no legal authority over her.

¶9.    To satisfy its burden under Section 97-3-95(2), the State was required to present sufficient evidence that Hawkins (1)  sexually penetrated Jane, (2)  that she was under the age of eighteen, and (3) that Hawkins was in a position of trust or authority over Jane.  First,

4

it was conclusively established at trial that Hawkins sexually penetrated Jane. It was also uncontested that Jane was sixteen at the time. Thus, Hawkins challenges only the sufficiency of the evidence against him concerning his position of trust or authority over Jane. In support of his argument, Hawkins states that he was not in a position of trust or authority over Jane because he did not fall into any of the enumerated categories laid out in Section 97-3-95(2). Hawkins also points out that in addition to not having legal authority over Jane, he also never took her to school, he never disciplined her, and he never gave her any advice.

¶10. At trial, the State presented the following evidence in support of its argument that Hawkins was acting as a stepfather to Jane and thus in a position of trust or authority over her. First, Tonya testified that she and Hawkins were common-law married in the state of Alabama. As the State pointed out, while Mississippi does not recognize common-law marriage, it does recognize a valid common-law marriage in another state. *George v. George*, 389 So. 2d 1389, 1390 (Miss. 1980). Hawkins confirmed that the couple considered themselves, and held themselves out as, a married couple. Indeed, Hawkins not only filed his and Tonya's taxes jointly, reporting to the government that the two were married, but Hawkins also claimed Tonya's children as dependents. Moreover, Hawkins revealed his own feelings towards Tonya's children and how he considered them to be his own by memorializing his intent for them inherit his estate. Tonya testified that she, Hawkins, and her children moved in together in Hawkins's home as a family. Tonya further testified that she and Hawkins contributed equally to the family's finances.

¶11.    Both Jane and Tonya testified that everyone, including Hawkins, considered him to be the children's stepfather and referred to him as such.  Jane stated that she never felt uncomfortable around Hawkins because she trusted him.  Jane further testified that although she never had to be directly told to obey Hawkins because she never got in trouble, it was understood in the household that the children were expected to obey him.  Based on the facts, a rational trier of fact could have found beyond a reasonable doubt that Hawkins was in a position of trust or authority over Jane.

¶12.    In *Campbell*, the Court found that the defendant was in a position of trust or authority over the minor even though he was not a licensed foster parent.  *Campbell*, 125 So. 3d at 52 (¶ 12).  Sixteen-year-old Lauren was placed into the care of Kitty and David Campbell, who were in the process of becoming licensed foster parents.  *Id.* at 49 (¶ 2).  During her time with the Campbells, Lauren and David began a sexual relationship, which ultimately resulted in David's being indicted for ". . one count of sexual battery of a minor by a person in a position of trust and authority under Mississippi Code Section 97-3-95(2)" as Lauren's foster parent.  *Id.* at 50 (¶ 7).  Campbell was convicted, but the Court of Appeals reversed and "found that there was no evidence that Campbell was Lauren's foster parent or legal guardian, that there was no evidence in the record that the Campbells had any control over Lauren or her care, and that Lauren was merely a visitor in the Campbells' home." *Id.* at 51-52 (¶ 12).

¶13.    The Mississippi Supreme Court reversed, however, and clarified that the list of individuals in Section 97-3-95(2) who are typically in positions of authority only serves as

6

examples and are not limited to persons in positions of legal authority over the child. *Id.* at 52 (¶ 13). The Court further elaborated on the breadth of Section 97-3-95(2) by stating:

> The statute includes a nonexhaustive list of the type of positions that would qualify as a person in a position of trust or authority over a child. . . [and] [t]he list of enumerated positions merely provides examples of positions that would fit the statute, and is not intended to limit the circumstances under which a person could be found to be in a position of trust or authority over a minor.
>
> . . . .
>
> Additionally, while many teaching and coaching positions do require certification, not all do. We doubt that anyone would argue a school teacher is not in a position of trust or authority over his or her student simply because he or she does not have a teaching certificate or license. Thus, while a determination of whether Campbell was Lauren's licensed foster parent or legal guardian is a good starting point for analysis, it is not the end of the discussion. To determine whether there was sufficient evidence for a jury to determine that Campbell was in a position of trust or authority over Lauren, *we look to all the evidence presented and the totality of the circumstances, not just to Campbell's legal position*.

*Id.* at 51-52 (¶¶ 11, 14) (emphasis added).

¶14. The Court went on to note that while Campbell was not officially Lauren's foster parent, he was acting as her *de facto*[2] foster parent, and that, viewing the totality of the circumstances, there was sufficient evidence for the jury to find that Campbell was in a position of trust or authority over Lauren regardless of the fact that he was not yet licensed. *Id.*

¶15. Similarly, looking to the totality of the circumstances in the present case, Hawkins was clearly in a position of trust and authority over Jane despite the fact that their relationship was

---

[2]Black's Law Dictionary defines "de facto" as "actual; existing in fact; having effect even though not formally or legally recognized." *De facto*, Black's Law Dictionary (2d pocket ed. 2001).

not legally defined. It is apparent that everyone in the home considered Hawkins to be the children's stepfather and Tonya's legal husband. Hawkins underscores his role in the home as merely the "live-in boyfriend." However, it is evident that he considered the children to be his own; it is the role of a *de facto* stepfather, not someone merely living in the same home, to claim children as dependents and to wish for them to inherit their estate.

¶16. As noted in **Campbell**, no one would doubt the position of authority held by an unlicensed teacher over her students; so too is there little doubt that a stepfather holds a position of authority over his stepchildren even though he and the children's mother are common-law married. It is abundantly clear from the record that Tonya, Jane, and the other children trusted Hawkins and recognized and respected his authority as with any parent regardless of his lack of legal authority over them. The totality of the circumstances defines Hawkins's position over Jane under Section 97-3-95(2), not the existence of a legal relationship.

¶17. Viewing all of the evidence in the record in the light most favorable to the State, a rational jury could have found that Hawkins was in a position of trust or authority over Jane as required under Section 97-3-95(2).

## CONCLUSION

¶18. Because the State presented sufficient evidence of each element required under Section 97-3-95(2), we affirm Hawkins's conviction.

¶19. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL, BEAM CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**